WILLIAM G. LOTT, COMPLAINANT-RESPONDENT, v. JERRY DELMAR, JOHN WARNER AND I. ARTHUR LEVY, DEFENDANTS-APPELLANTS.

Argued April 18, 1949—Decided May 9, 1949.

*Mr. Milton M. Unger (Messrs. Milton M. & Adrian M. Unger,* attorneys) argued the cause for the appellants.

*Mr. Walter Goldberg* argued the cause for the respondent.

The opinion of the court was delivered by

HEHER, J. ▇ Goods sold at public auction were stolen shortly after the fall of the hammer, but before payment of the price bid and delivery of possession to the buyer; and the question at issue is whether the risk of loss was the seller's or the buyer's, and this, in turn, depends upon whether title to the goods had passed at the time of the theft, for, in' the

absence of provision *contra,* the risk of loss follows the title, with certain exceptions not here pertinent. *R. S.* 46:30–28. See also 46:30–14.

◼ Generally, the principles of the Uniform Sales Act (*R. S.* 40:30–1 *et seq.*) govern sales at public auction. Article 8 of the act deals with sales by auction. It is therein provided, *inter alia,* that where goods are put up for sale by auction in lots, each lot is the subject of a separate contract of sale; and that a sale by auction is complete when the auctioneer announces its completion by the fall of the hammer, or in other customary manner. *R. S.* 46:30–27. Thus it is that, when the auctioneer's hammer falls, the vendor and the vendee bear the same relation to each other as the parties to a conventional contract for the sale of goods. The property in the goods passes when the hammer falls, unless the intention is to the contrary. *Harris v. Merlino,* 137 *N. J. L.* 717 (*E. & A.* 1948). Where there is a contract to sell specific or ascertained goods, the property in the goods is transferred to the buyer at such time as the parties intend it to be transferred; and for the purpose of ascertaining the intention, regard shall be had "to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case." *R. S.* 46:30–24. Where there is an unconditional contract to sell specific goods, in a deliverable state, unless a different intention appears, the property in the goods passes to the buyer when the contract is made; and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. *R. S.* 46:30–25. These are rules in aid of intention. As in the case of other contracts, we are enjoined to ascertain and effectuate the intention of the parties as revealed by the language employed to express it, considered in relation to the subject matter and the surrounding circumstances.

◼ Ordinarily, the title passes in the case of an executed contract of sale, unless there be provision to the contrary, while in the case of an executory contract of sale, the property is not transferred, in the absence of explicit provision for such transfer, until the sale is consummated by perform-

ance of the terms and conditions of the contract of sale. Of course, the postponement of the time of payment or delivery, without more, is not significant of a retention of title. *R. S.* 46:30–25, cited *supra*. The question is whether the transfer of title is made dependent upon the performance of an act *in futuro;* if so, title does not pass until the fulfillment of the condition precedent. Until then, the contract remains executory. In technical strictness, there is no sale unless the parties intend an immediate transfer of ownership. The rule of intention governs at common law. *Hurff v. Hires,* 40 *N. J. L.* 581 (*E. & A.* 1878). Indeed, the Uniform Sales Act is largely declaratory of the common law. Its modifications of the common-law rules were designed to make for uniformity in the law of sales in this country. The act does not deprive parties of the common-law right of contract. The rule of the Uniform Sales Act is presumptive merely, and is therefore applicable only where the parties have not expressly stipulated in respect of the transfer of title.

Here, there was not a sale for cash; and so there was no intention to convey the property in the goods, subject to the vendor's possessory lien for the full purchase price until there was payment and delivery as concurrent conditions. Prior to the auction sale, the vendor, Delmar, and Lott agreed that, if Lott were the successful bidder, the vendor would be content with a substantial down payment if adequate security were given for the balance of the purchase price. The terms were reserved for future agreement. It was not merely a postponement of the time of payment. Shortly after the fall of the hammer, Lott made a cash payment of $1,500, "representing the deposit on" his "bid of $2,600," and entered into an agreement in writing to give his promissory note for the remainder, payable in sixty days, without interest, "to be secured either by a chattel mortgage or conditional bill of sale." There was provision also for a bill of sale by the bailiff. Later on that day, the bailiff executed a bill of sale for the goods to Lott and handed the instrument to Delmar's attorney. The next day Lott executed the promissory note as stipulated and a chattel mortgage to secure payment of the

note, drawn by the vendor's attorney, and was authorized to take possession of the goods. There was no delivery of the bill of sale; it was retained by the vendor's attorney as further security for the payment of the note. It was then that discovery was made of the theft of a substantial part of the goods during the night. We are not concerned with the rights of other bidders.

It is clear that there was no intention to transfer the property in the goods until the terms of payment were settled and executed. There was not an absolute sale without condition. The transfer of title and possession and the making of the cash payment and the giving of security for the remainder of the purchase price, in accordance with the later agreement of the parties, were made concurrent conditions. There is no indication of a purpose to transfer the property in the goods subject to the vendor's possessory lien until the payments were agreed upon and the agreement executed. Quite the contrary. The terms of payment and the nature and form of the security remained unsettled, and so the contract was purely executory and not a present bargain and sale and the title remained in the vendor. Compare *Hurff v. Hires, supra; Leatherbury v. Connor,* 54 *N. J. L.* 172 (*E. & A.* 1892); *National Newark Banking Co. v. Delaware, Lackawanna & Western R. R. Co.,* 70 *N. J. L.* 774 (*E. & A.* 1904). The parties could have provided for the immediate transfer of the property in the goods, even though the terms of payment had not then been settled; but this they did not do. Such an inference would be at variance with the realities and the normal significance of the transaction. There remained for determination by the parties, not only the amount of the cash payment, but also whether the security for the remainder would consist of a chattel mortgage or a conditional bill of sale. If the latter, title would of necessity remain in the vendor, for a "conditional sale" is a contractual device by which the property in the goods is not transferred until payment of part or all of the price or compensation, or upon the performance of the condition or the happening of the contingency stipulated. *R. S.* 46:32–2. And it goes

without saying that, until the nature of the security was settled by agreement, the title remained where it was.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.