ISABELLA M. ROSS AND DESMOND ROSS, PLAINTIFFS-RESPONDENTS, v. ANGUS ORR AND ELIZABETH ORR, DEFENDANTS-APPELLANTS.

Argued November 14, 1949—Decided December 12, 1949.

*Mr. Cecil S. Ackerson* argued the cause for appellants (*Mr. Edward Farry, Jr.,* attorney).

*Mr. Benjamin I. Kantor* argued the cause for respondents (*Messrs. Karkus & Kantor,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. The question here is one of procedure and the inquiry is whether or not, on defendants' opening, the court can direct a verdict for the plaintiffs before any evidence is taken. The case was certified here on our own motion.

The action was commenced in the Monmouth County Court for the recovery of money due under a contract for the sale and delivery of certain garage equipment. The defendants' answer denied the matters set forth in the complaint and alleged that, as a condition precedent, the plaintiffs agreed to deliver the garage equipment and to execute a bill of sale for the same, that the plaintiffs failed to deliver the equipment and the defendants were therefore under no obligation to perform their part of the contract.

The contract between the parties was admitted in evidence at a pre-trial conference and marked Exhibit P-1. It was dated March 18, 1946, and provided for the sale to the defendants of a garage building and land in Union Beach for the sum of $6,000 and in addition stipulated:

"The parties of the first part do hereby agree to sell and deliver to the parties of the second part all personal property now contained in on and about the said premises with the exception of the hydraulic jack for the sum of One thousand ($1000.00) Dollars to be paid simultaneously with the delivery of the deed for the said premises as hereinbefore mentioned; and the parties of the second part do hereby agree to pay to the parties of the first part the sum of One Thousand ($1000.00) Dollars as the purchase price for the personal property as hereinbefore stated, and agree to pay the same simultaneously with the delivery of the deed for the premises hereinbefore mentioned.

"Said personal property to be conveyed free of any and all liens of any nature whatsoever.

"AND IT IS FURTHER AGREED, by the parties to these presents, that the said party of the second part, their heirs and assigns, may enter into and upon the said land and premises on the 18th day of March, 1946, next ensuing the date hereof, and from thence take the rents, issues and profits to them and their use.

"AND IT IS FURTHER AGREED, by the parties hereto, that the said Deed of Warranty shall be delivered and received at the office of Edward Farry, Jr., 24 West Front Street, Keyport, New Jersey, between the hours of 9:00 in the forenoon and 5:00 o'clock in the afternoon on or before the 1st day of May."

The real estate part of the transaction was not in issue as the transfer of the property had been completed and the consideration paid. This was commented on in the plaintiffs' opening and counsel then said:

"After the parties arrived at the office of Mr. Farry and entered into the contract for the sale of the personal property—and from now on I will confine my remarks purely to the garage equipment and forget the real estate transaction, as I explained to you, because that was paid for and that is out—they entered into some discussion about price and agreed to it and then signed the papers. Delivery was then made. We contend there was nothing more we had to do with respect to that personal property. The transaction was complete and binding. However, in order to get the hydraulic jack out of the garage, Mr. and Mrs. Orr and Mr. Farry suggested that we go down to the garage in Union Beach, which is some two or three miles from Keyport, take the hydraulic jack and leave the key at the home of Father Slattery. We will show you we went to the garage, arrived there around four o'clock, spent some ten or fifteen minutes, saw everything was in order, took our hydraulic jack, closed the door, delivered the key, and that was the end of it. Two days later, we will show you that a robbery was reported to the Union Beach police as having occurred the night before, which would be the 19th."

Defendants' counsel did not controvert these facts but in his opening statement said:

"If what Mr. Kantor has just said all be true, then I submit that my clients might as well go home and forget about the entire transaction, but I want to assure you, ladies and gentlemen, that that is not the complete picture.

"The complete picture is this, and you will see the contract that was made at the time these parties entered into the agreement. First

of all, the agreement was dated the 18th day of March, not March 19th. We assume, but we aren't certain because a robbery was discovered on March 20th, but title, ladies and gentlemen, to the real estate did not actually pass until May 15th, some months later. You will see and I believe in evidence will be the contract that these persons signed at the time this agreement was entered into. It says possession of the real estate, ladies and gentlemen, was to be on the 18th day of March. It doesn't say anything as to possession of the personal property, the reason being, as you will see as this case develops, that the seller, the now plaintiff, Mr. Ross, and Mr. Orr were to go down to the premises and make an inventory of the personal property that was there. Now, this was all done previous to the time of this robbery, and we contend to the contrary of what Mr. Kantor says, that the goods that were stolen were still the goods of Mr. Ross and not the goods of Mr. Orr. As a consequence, we don't have to pay for anything that wasn't there. And I might say, ladies and gentlemen, to you now, in all sincerity, in all fairness, that whatever was there at the time that we were entitled to receive it, we have always been ready and willing to pay and I am certain the testimony will show that we have on more than one occasion said to Mr. Ross, 'If you will give us a true inventory with a true picture as far as the price is concerned, we will pay you.' We paid him everything that was due him under the contract right up to the very minute, with the exception of two or three items that were in there, and we have always been ready to do it."

Plaintiffs then moved for a directed verdict in their favor on two grounds: first, that the agreement speaks for itself and its terms providing for possession to be delivered on March 18, 1946, cannot be varied by parol evidence and, second, that Rule 1 of *R. S.* 46:30–25 applies.

Counsel for the defendants, in an extended colloquy with the court, clarified the position taken in his opening by contending the contract "says possession shall be on May 1st" and "although at the moment it is not in the case, there was an extension of the time of the agreement, and I have proof to that effect." It is apparent that the proof referred to was part of an agreement "outside of the contract" and counsel argued, "but the contract doesn't necessarily have to contain the entire agreement of the parties." The trial court ruled this was not so "unless you have got a supplemental contract to change the terms thereof," but no proof of such supplemental agreement was offered by the defendants. We find no error in the trial court's ruling in this respect. Although

the terms of a written contract may be altered or changed by a subsequent agreement if based on a proper consideration, *Headley v. Cavileer,* 82 *N. J. L.* 635 (*E. & A.* 1912) ; *Troth v. Millville Bottle Works,* 89 *N. J. L.* 219 (*E. & A.* 1916) ; *Frank Wirth, Inc., v. Essex Amusement Corp.,* 115 *N. J. L.* 228 (*E. & A.* 1935) ; *Levine v. Blumenthal,* 117 *N. J. L.* 23 (*Sup. Ct.* 1936) ; affirmed, 117 *N. J. L.* 426 (*E. & A.* 1937) ; *Ball v. Metalwash Machinery Co., Inc.,* 123 *N. J. L.* 285 (*E. & A.* 1939) ; *Bartz v. MacFarland,* 125 *N. J. L.* 59 (*Sup. Ct.* 1940), it is equally true that if the written contract purports to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be supplied by extrinsic evidence, parol evidence to vary or add to its terms is not admissible. *Naumberg v. Young,* 44 *N. J. L.* 331 (*Sup. Ct.* 1882) ; *Cohen v. Cohn,* 102 *N. J. Eq.* 245 (*E. & A.* 1928) ; *R. E. Brooks Co. v. Storr,* 111 *N. J. L.* 316 (*E. & A.* 1933) ; *Downs v. Jersey Central Power & Light Co.,* 117 *N. J. Eq.* 138 (*E. & A.* 1934) ; *Pelinger v. Bernfeld,* 133 *N. J. L.* 31 (*E. & A.* 1945) ; *Zone Co. v. Service Transportation Co., Inc.,* 137 *N. J. L.* 112 (*Sup. Ct.* 1948). The court cannot undertake to reform a written contract and testimony that the agreement was other than as written is incompetent and should be excluded. *Canter v. Seiden,* 128 *N. J. L.* 156 (*Sup. Ct.* 1942).

The contract obviously did not provide for possession on May 1st as contended by the defendants. On the contrary, after specifically describing the personal property sold, the amount to be paid therefor, and the time of payment, it recited that the purchasers, "their heirs and assigns, may enter into and upon the said land and premises on the 18th day of March, 1946 next ensuing the date hereof, and from thence take the rents, issues and profits to them and their use." This, we think, indicated that the parties intended the purchasers to take possession of the personalty on the date mentioned, to wit, March 18, 1946, and that title thereto should likewise pass at the same time. Admittedly the contract directed the payment for the equipment was to take place "simultaneously with the delivery of the deed for the

premises" and this, according to the terms, was to be on May 1st by "deed of warranty." Although time of payment for the personalty was postponed by the provisions of the agreement, there was no expression negativing the statutory presumption of the passage of title when the contract was signed.

If, after weighing the language employed in the contract, doubt still exists as to the interpretation of it, then, under the statute, we turn to the "conduct of the parties" and the "circumstances of the case," as there provided, "for the purpose of ascertaining the intention of the parties." *R. S.* 46:30–24 provides:

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

After the contract was signed the purchasers asked the sellers to remove the hydraulic jack reserved to them and to leave the key to the premises at the home of their friend. The sellers complied with this suggestion, "saw everything was in order, took our hydraulic jack, closed the door, and delivered the key." The conduct of the parties and the circumstances here narrated rather impressively register the purpose intended.

Giving the defendant the benefit of every doubt and assuming no inference as to their intent can be spelled out either by the contract or by their conduct, then the statutes apply unless the contract expresses "a different intention." *R. S.* 46:30–25 provides:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

The quoted sections of the statutes are cited and construed in *Lott v. Delmar*, 2 *N. J.* 229 (1949). In the present case there is an unconditional contract to sell specific goods in a deliverable state. Under the statute set forth above, the property in the goods passed to the buyers when the contract was made unless a different intention appears and it is immaterial whether the time of payment or the time of delivery or both be postponed.

██ ██ Was there anything in the contract to indicate a different intention? It is asserted such a contrary design appears in the provision for the later conveyance of the title to the real estate but the contract deals with the realty and personalty as separate and distinct transactions and there is no specific provision that the general rule for the immediate transfer of the personal property should not apply. It is presumed the parties contracted in the light of the statute and, if they had a purpose contrary to the legislative enactment, they would have expressed it in clear and unmistakable language. Finding no such declaration, we conclude that the statutes control and title passed on the date the contract was executed.

██ Summary disposition on counsel's opening should not be employed unless the facts are undisputed and the law involved is clear. In reviewing the direction of a verdict for the plaintiff on an opening, the Court of Errors and Appeals in *Alexander v. Manza*, 132 *N. J. L.* 374 (*E. & A.* 1945), said:

"The direction of a verdict for the plaintiff on an opening is rather unusual but we see no particular objection to it where the facts are all admitted. The situation seems to be about the same as in cases of motion to strike out an answer. If there can be a nonsuit on an opening, which is frequently the case, then on the other hand where the defendant admits the facts stated in the opening and urges in defense something that has no legal validity, it would seem that a direction is in order."

We have examined the record with care in the case *sub judice*. It comes within this rule and we are convinced the

defendants' rights were not infringed upon by the granting of the motion directing a verdict.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD and BURLING—5.

*For reversal*—Justice OLIPHANT—1.