13 N.J. Super. 231 (1951)
80 A.2d 316
STANLEY T. DRAUS, CLAIMANT-APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND CAMPBELL SOUP COMPANY, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1951.
Decided April 20, 1951.
*232 Before Judges EASTWOOD, BIGELOW and FREUND.
Mr. Abraham Greenberg argued the cause for the claimant-appellant.
Mr. Clarence F. McGovern argued the cause for the respondent, Board of Review, Division of Employment Security, Department of Labor and Industry.
Mr. Grover C. Richman argued the cause for the respondent, Campbell Soup Company.
The opinion of the court was delivered by EASTWOOD, J.A.D.
The claimant, Stanley T. Draus, appeals from the decision and final judgment of the Board *233 of Review, Division of Employment Security, Department of Labor and Industry, State of New Jersey (hereinafter referred to as the "Board"), sustaining the deduction of one day's pay from his benefits for the first week of July, 1949. Approximately 1,000 employees are affected by the Board's decision and this appeal has been taken as a test case.
On July 1, 1949, the respondent, Campbell Soup Company, employer of the claimant-appellant, suspended production temporarily. It resumed operations approximately two weeks thereafter, during which period of time Draus was unemployed. On July 22, 1949, Draus received a check representing the four days of his employment in the last week of June and an extra day's pay. The company contends that the extra day's pay was intended to cover July 4, whereas Draus, although he did no work on July 1, insists it represented pay for that day. In processing Draus' claim for unemployment benefits, Edward J. Hull, Chief of Unemployment Benefits, concluded that the extra day's pay was received for July 4 and it was deducted from that week's benefits. On claimant's appeals, respectively, to the Appeal Tribunal and the Board of Review, a similar determination was made.
The statutory provisions pertinent to this issue are:
"(b) Weekly benefits for unemployment. Each eligible individual who is unemployed (as defined in subsection (m) of section 43:21-19 of this chapter) in any week shall be paid with respect to such week (except as to final payment) an amount equal to his weekly benefit rate less any remuneration in excess of three dollars ($3.00) paid or payable to him for such week; provided, that such amount shall be computed to the next highest multiple of one dollar ($1.00), if not already a multiple thereof." R.S. 43:21-3 (b).
"(m) Unemployment.
(1) An individual shall be deemed `unemployed' for any week during which he is not engaged in full-time work and with respect to which his remuneration is less than his weekly benefit rate." R.S. 43:21-19 (m).
"(p) `Remuneration' means all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash." R.S. 43:21-19 (p).
*234 The record submitted for our consideration is not too satisfactory. It consists largely of statements made before the Senior Appeals Examiner of the Appeal Tribunal by representatives of the company and the union, of which latter organization the claimant is a member.
The management-labor contract between the company and the union provided, inter alia, for payment of a day's wages to employees entitled thereto for certain specified holidays, one of which was July 4. In 1949, this holiday fell on Monday. At the time the company suspended operations, there were approximately 5,000 employees, 4,000 of whom were entitled to vacation pay. As July 4 came within the vacation period, the company decided to make an extra day's payment of wages to all of its employees, regardless of any legal right thereto. The claimant contends that as the result of a verbal agreement made between respective representatives of the company and the union, an extra day's pay was made for July 1 and not July 4; that "* * * the payment by the company to the employees of a sum equivalent to eight hours pay for July 1, 1949, represented the establishment, as a managerial expedient, of an emergency or special holiday so as to forestall protests by workers who were cut off from work on July 1, 1949. It should be definitely borne in mind that these workers, who were not entitled to vacation pay and who were given the day's pay for July 1, 1949, did not get one cent more pay for that week than if they had actually worked on July 1, 1949. Had the arrangement initiated by the company not been agreed upon, these employees would have worked on July 1, 1949, in any case, and would have been entitled to receive pay for that date, obviously. Therefore, having received a full week's pay for the week ending July 3, 1949, and nothing more, how can they, with reason, be said to have received partial pay for the week commencing July 4, 1949?" On the contrary, the company contends that the management-labor agreement designates July 4 as a paid holiday; that the written agreement may not be varied by a verbal agreement, citing Ross v. Orr, 3 N.J. 277 (1949); *235 Canter v. Seiden, 128 N.J.L. 156 (Sup. Ct. 1942); and that, in fact, the payment represented a day's wage for July 4 and not July 1.
Our review of the record convinces us that the sole issue is: did the claimant receive the extra day's pay for July 1 or July 4? If the latter, the claimant concedes it was properly deducted from his benefits. The check in payment of the claimant's last week of employment during the month of June was received by him on July 22, 1949, the first pay day after returning to work. It represented five days' work, although concededly the claimant worked only four days. There was no notation on the check to indicate what the extra day's pay represented. Approximately 30 employees worked on July 4 and were paid double time in accordance with the management-labor agreement, whereas the 600 employees who worked July 1, were paid straight time. The company contends that had there been any agreement that the holiday payment be shifted from July 4 to July 1, the employees who worked on July 1 would have been entitled to double time under the terms of the agreement, and points to the fact that the union did not protest the wages paid to those who worked on July 1 and 4, respectively.
Assuming, but not conceding, that the management-labor contract could have been altered by the asserted verbal agreement, we are convinced that the record does not support the claimant's contention that the payment of the extra day's pay was, in fact, accomplished by such an agreement. On the contrary, we are satisfied that it actually represented payment for July 4. The deduction thereof from his benefits was, therefore, properly made under the pertinent provision of the statute.
The decision and final judgment of the Board of Review is affirmed, with costs.