B. JESELSHON, INC., BERKELEY'S GALLERIES, INC., MAXWELL'S, INC., SOL SOLOMON, ISADORE GORDON AND STEPHEN KAVKY, PLAINTIFFS-APPELLANTS, v. CITY OF ATLANTIC CITY, DEFENDANT-RESPONDENT.

Argued February 10, 1976—Decided May 14, 1976.

*Mr. Jeffrey L. Gold* argued the cause for plaintiffs-appellants (*Messrs. Feinberg & Ginsburg,* attorneys).

*Mr. Murray Fredericks,* City Solicitor, argued the cause for defendant-respondent (*Mr. Murray Fredericks,* City Solicitor, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. This appeal taken by auctioneers doing business in Atlantic City involves the validity of an ordinance

adopted by that City to regulate auction sales.[1] In substance, the ordinance requires the auctioneer to refund in full the purchase price when demand is made within 72 hours after the purchase, provided the purchaser returns the article or merchandise to the place of purchase in the same condition as when purchased.[2] The trial judge upheld the validity of the ordinance finding it to be a proper exercise of police power. The Appellate Division affirmed. Plaintiffs appeal to this Court as of right. R. 2:2–1(a)(1). We affirm.

The basic contention as to the invalidity of the ordinance is that it is in conflict with provisions of the Uniform Commercial Code regulating auction sales. It is also contended that the ordinance impairs the right to contract as well as the fundamental right to engage in the "lawful pursuit of private property," is overly burdensome and creates confusion and uncertainty in the field of auction sales. Finally, it is argued that since the ordinance provides that a person violating its terms may be jailed for not more than 90 days or fined, or both, this constitutes imprisonment for debt.

There is no merit in any of these contentions. The penalty provision of the ordinance permitting the imposition of a jail term is for the public injury involved. It does not imprison for debt but rather penalizes the auctioneer who has offended against the right of the public to a refund of the purchase price upon proper demand and return of the goods. See State Board of Medical Examiners v. Kornreich, 136 N. J. L. 367 (Sup. Ct. 1947).

Nor is there any substance to the contentions that the ordinance impairs the right to contract, runs afoul of the fundamental right to engage in the "lawful pursuit of private property" and creates confusion and uncertainty in

---

[1] The ordinance also applies to sales made in demonstration places.

[2] Section 2 of the ordinance requires that a sign be displayed stating "Cash refunds in full amount of purchase within 24 hours of demand made within 72 hours of purchase."

the field of auction sales. Contract rights and property rights are not absolute. Their exercise is always subject to the legitimate exercise of the police power. *Inganamort v. Borough of Fort Lee*, 62 *N. J.* 521 (1973).

■ Plaintiffs contend that auction and demonstration sales are now at the mercy of the whim and caprice of buyers, that plaintiffs cannot be certain that sales made by them are final until three days have elapsed and that this lack of finality affects credit adjusting, maintenance of inventory and the like. They also argue that the requirement of a sign giving notice of cash refunds within 72 hours of purchase is an invitation to buyer irresponsibility. However, we do not consider the restrictions and conditions imposed to be unduly burdensome. As heretofore noted, the right to do business is always subject to reasonable regulation in the public interest.

Another example of such regulation is our Retail Installment Sales Act of 1960, *N. J. S. A.* 17:16c-1 *et seq.* Section 61.5 thereof specifically provides that any retail installment sale of goods or retail installment contract for the sale of goods (with certain exceptions) entered into at a place other than the place of business of the retail seller may, within a limited time, be rescinded by the buyer who shall be entitled to a refund of all money paid. In creating this absolute right of rescission, the Legislature declared it to be necessary for the protection of the consumers of this State. See also 15 *U. S. C. A.* § 1635 providing for the right of rescission under the Federal Consumer Credit Protection Act.

By statute, *N. J. S. A.* 40:52-1(i), municipalities may adopt ordinances to license and regulate auctioneers and their businesses and "make such regulations as the governing body of the municipality shall deem necessary, to protect the public against fraud at public auction sales."

Here, the ordinance notes that the business of auction sales has been the subject of numerous complaints by persons who have allegedly been victimized, and that one of the

main complaints has been the refusal of the operators to make restitution to persons who claim they have not received what they bargained for when making purchases.

Obviously the term "fraud" is used in the broad sense. Boardwalk auction sales are very sophisticated operations designed to attract the casual visitor and draw him into the contrived excitement of the moment. Not infrequently, the visitor realizes too late that he has purchased at an inflated price something he does not need or want and which is not what it was represented to be. However, as a practical matter, because of his visitor status there is little or nothing he can do about it. The remedial provisions of the ordinance are a prophylactic device directed at these abuses and serve to protect the public from this kind of "fraud." See *Wagman v. Trenton,* 102 *N. J. L.* 492 (Sup. Ct. 1926).

 Finally, we find no conflict between the ordinance in question and the Uniform Commercial Code. *N. J. S. A.* 12A:1–101 *et seq.* One section of the Code, *N. J. S. A.* 12A:2–328 deals with sale by auction. In pertinent part it provides that

> (2) A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner. Where a bid is made while the hammer is falling in acceptance of a prior bid the auctioneer may in his discretion reopen the bidding or declare the goods sold under the bid on which the hammer was falling.

The argument made is that the ordinance herein conflicts with the finality of sale provision in this section. However, it is clear from the draftsman's comment appended to the section that paragraph (2) was intended to resolve the question, as between the parties involved, of the finality of an auction sale when a bid is made while the hammer is falling. It is not intended to restrict the appropriate exercise of governmental authority over auction sales for the public good and welfare.

Other provisions of the Code dealing with "sale," "passing of title," "revesting," "rescission" and "revocation of acceptance" likewise are intended to give certainty and stability to the law of commercial transactions. In this sense they do not purport to limit the proper exercise of police power in the public interest.

The provisions of *N. J. S. A.* 40:52–1 which empower a municipality to adopt ordinances licensing auctioneers and to make such regulations as the municipality shall deem necessary "to protect the public against fraud at public auction sales" would have little meaning if plaintiffs' argument were correct.

Our conclusion is that the ordinance is a reasonable restriction on the business of auction sales and is in all respects a lawful exercise of municipal power under *N. J. S. A.* 40:52–1.

Affirmed.

SCHREIBER, J. (dissenting). That portion of Atlantic City Ordinance No. 42, adopted and effective on January 9, 1975, creating a right of unilateral rescission in the buyer in the absence of fraud is invalid, its adoption exceeding the power vested by the State in the municipality. This view is supported by a fair reading of the enabling legislation, *N. J. S. A.* 40:52–1(i), and that interpretation is confirmed by the State's adoption of the Uniform Commercial Code. To construe that ordinance provision otherwise contravenes the intent and purposes of statewide and nationwide uniformity in the sale of goods which the legislature sought in adopting the Code.

*N. J. S. A.* 40:52–1(i) authorizes a governing body to license and regulate "[a]uctioneers and their business; . . . fix their fees, and license and regulate public auctions; make such regulations as the governing body of the municipality shall deem necessary, *to protect the public against fraud* at public auction sales . . . ." [Emphasis added]. Presumably pursuant to that authority Atlantic City adopted its ordinance

in which it provided that it shall be unlawful for any auction gallery ". . . to refuse to refund or return the money, check or other evidence of indebtedness to the person who has purchased an article or merchandise from said licensee within twenty-four (24) hours when demand has been made for the return of the money, check or other evidence of indebtedness within seventy-two (72) hours after the purchase, provided that the purchaser returns the article or merchandise to the place of purchase in the same condition as it was in when purchased."

The statutory authorization to protect the public against fraud does not sanction creation of an advantageous right in the buyer irrespective of fraud. Still, this is the effect of the Atlantic City ordinance. Under the ordinance a purchaser who has acquired an article at an auction, which is precisely as represented, may with impunity decide a day or two later that he regrets the purchase. Even in the absence of legal or equitable fraud, the buyer has the right of rescission. The ordinance has added a new dimension to the contract comparable to that referred to by the majority which is found in the Retail Installment Sales Act, *N. J. S. A.* 17:16C–61.5. But here the additional contract term was inserted by a municipality whose authority was limited to enacting provisions to "protect the public against fraud." *N. J. S. A.* 40:52–1(i), *supra.* To prevent or guard against fraud does not under the circumstances here include remedies in the event of fraud. The ordinance prescribes remedial action for every purchaser at an auction sale irrespective of fraud. The statutory enabling legislation creates no such power in Atlantic City. Municipal corporations must operate within their delegated authority. As we have frequently said, their powers are wholly derivative from state statute. *Wagner v. Newark,* 24 *N. J.* 467, 474 (1957); *West Point Island Civic Ass'n v. Tp. Com. of Dover Tp.,* 54 *N. J.* 339, 345 (1969); *In re Public Service Electric and Gas Co.,* 35 *N. J.* 358, 370 (1961). The ordinance is clearly overbroad.

I have alluded to the thought that the protection against fraud contemplated by the statute does not refer to remedies for fraud. The statute contemplates consumer protection. If that be so, why should a purchaser's right to rescission be limited to a 72 hour period after a fraudulent sale? On the other hand the seller might deny fraudulent misrepresentations and adjudication of that issue would obviously require more than a 24 hour period, the time within which the ordinance prescribes the funds must be returned. In view of other statutory law which provides for remedies, to construe the phrase "protect the public against fraud" broadly is not justified. The municipality's authority is limited to adoption of regulations which will prevent fraud, such as adequate and proper lighting on the subject being auctioned, prohibition of "shills", opportunity to examine the goods prior to the bidding, adequate notice of the terms of the bidding, etc.

The State adopted the Uniform Commercial Code to simplify, clarify and modernize the law governing commercial transactions and to accord that law with that of other jurisdictions. *N. J. S. A.* 12A:1–102. The Code's provisions cover all facets of the terms of sales, breaches and remedies. A resume of its provisions is demonstrative. At the outset it should be noted that the principles of law and equity, including fraud, estoppel, misrepresentation, duress, coercion, and mistake supplement the Code provisions unless displaced by a particular provision of the Act. *N. J. S. A.* 12A:1–103.

Chapter 2 of the Code expounds the rules which govern the sale of goods, including auctions.[1] It sets forth a comprehensive set of rules and regulations governing the forma-

---

[1]Examples of applicability of the Code to auctions may be found in *Regan Purchase & Sales Corp. v. Primavera*, 68 *Misc.* 2d 858, 328 *N. Y. S.* 2d 490, 492 (Civ. Ct. 1972) (implied warranties of merchantability) (dictum) ; *Miron v. Yonkers Raceway, Inc.*, 400 *F.* 2d 112 (2d Cir. 1968) (inspection, rejection and acceptance of goods) ; *Diefenbach v. Gorney*, 93 *Ill. App.* 2d 51, 234 *N. E.* 2d 813 (1968) (title and risk of loss).

tion of contracts, *N. J. S. A.* 12A:2–201 to 210, the general obligation and construction of contracts, *N. J. S. A.* 12A:2–301 to 328, title, creditors and good faith purchasers, *N. J. S. A.* 12A:2–401 to 403, performance, *N. J. S. A.* 12A:2–501 to 515, breaches, repudiations and excuses, *N. J. S. A.* 12A:2–601 to 616, and remedies, *N. J. S. A.* 12A:2–701 to 725.

The Code establishes some special guidelines for auctions. *N. J. S. A.* 12A:2–328 reads as follows:

(1) In a sale by auction if goods are put up in lots each lot is the subject of a separate sale.

(2) A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner. Where a bid is made while the hammer is falling in acceptance of a prior bid the auctioneer may in his discretion reopen the bidding or declare the goods sold under the bid on which the hammer was falling.[2]

(3) Such a sale is with reserve unless the goods are in explicit terms put up without reserve. In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale. In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time. In either case a bidder may retract his bid until the auctioneer's announcement of completion of the sale, but a bidder's retraction does not revive any previous bid.

(4) If the auctioneer knowingly receives a bid on the seller's behalf or the seller makes or procures such a bid, and notice has not been given that liberty for such bidding is reserved, the buyer may at his option avoid the sale or take the goods at the price of the last good faith bid prior to the completion of the sale. This subsection shall not apply to any bid at a forced sale.

If an auction contract or any clause therein is unconscionable, the court may refuse to enforce it. *N. J. S. A.* 12A:2–302. The seller warrants that the merchandise is free of claims of a third person, *N. J. S. A.* 12A:2–312; the seller's

---

[2]When the hammer falls, the buyer and seller bear the same relation to each other as parties to a conventional contract for the sale of goods. *Lott v. Delmar,* 2 *N. J.* 229, 232 (1949).

affirmation of facts or promises made to the buyer which relates to the article and becomes part of the basis of the bargain creates an express warranty, *N. J. S. A.* 12A:2–313; unless excluded or modified the seller impliedly warrants that the goods are merchantable so that at least they:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any. [*N. J. S. A.* 12A:2–314(2)].

Further the Code provides that where the seller ". . . has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." *N. J. S. A.* 12A:2–315.

The Code expressly covers situations where goods may be returned even though they conform to the contract. *N. J. S. A.* 12A:2–326. This section is not concerned with remedies for breach of contract but governs transactions where the parties have agreed that the buyer may return the goods even though they are as warranted. Depending on whether there is a sale on approval or a sale or return, (1) the risk of loss is to be borne by the seller until the buyer's acceptance, (2) the option to return is conditioned on the goods being "in substantially their original condition" and (3) the return is at the buyer's risk and expense. *N. J. S. A.* 12A:2–327.

Tender of the goods entitles the seller to acceptance and payment. *N. J. S. A.* 12A:2–507. The buyer is given a

right before payment or acceptance to inspect the goods. *N. J. S. A.* 12A:2–513. The buyer's rights to reject, *N. J. S. A.* 12A:2–602, and accept, *N. J. S. A.* 12A:2–606, the merchandise are delineated. The buyer's remedies, whether the goods are rejected or accepted, are specified. *N. J. S. A.* 12A:2–711 to 715.

Significantly the Code provides that "[r]emedies for material misrepresentation or fraud include all remedies available . . . for non-fraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy." *N. J. S. A.* 12A:2–721.

The Code then has expressly provided for the rights of buyers to repudiate sales because of fraud (legal and equitable), misrepresentation, coercion, and duress. It has also inserted protective devices for buyers in the absence of fraud, including the right to return goods. This comprehensive commercial statute encompasses the same subject matter incorporated in the Atlantic City ordinance. Revocation because of the seller's fraud is expressly covered. Revocation irrespective of fraud is contemplated by agreement of the parties.

*N. J. S. A.* 40:52–1(i) delegates to the municipality authority to enact regulations to protect the public against fraud at public auction sales. As previously indicated, appropriate use of that authority does not conflict with the subject matter embraced in the Code and as to which legislative intent of uniformity is manifest. The municipal authority and the provisions of the Uniform Commercial Code effectively exist side by side and in harmony with each other. *Cf. Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth.,* 67 *N. J.* 403, 414–416 (1975). Municipal authority has been limited to protective measures to prevent fraud at auctions pertaining to physical aspects of public auctions, such as the hours, lighting, appropriate description of nature of invitations to the public to enter the premises and ex-

planation of terms of the auction. *See, e. g., Wagman v. Trenton,* 102 *N. J. L.* 492 (Sup. Ct. 1926). However, the Code governs the sales agreement and its terms, including the rights of rejection, revocation and rescission predicated on fraud or any other ground. In this manner the policy of uniformity in the commercial transaction is preserved and preventive measures to eliminate or minimize fraud may be adopted by municipalities.

Motivation for enactment of the Code has been the desirability of uniform regulation of commercial transactions throughout the State and with and among other jurisdictions. The Second Report of the State of New Jersey Commission to Study and Report Upon the Uniform Commercial Code notes that the Code "modernizes the law of commercial and financial transactions involving personal property and treats Commercial Law as a *comprehensive whole,* recognizing the interrelation between the various aspects of commercial transactions . . . and it increases the probability of uniformity of treatment of commercial transactions by the states."[3] [Emphasis added]. To permit each of the 567 municipalities to superimpose its particular and potentially conflicting provisions on the terms and conditions of the transaction mandated by the Code is contraindicated by the statewide policy enunciated by the Report and inherent in the Code. Although the majority implies that auctions and their attendant excitement are indigenous to Atlantic City, it may be noted that they are held throughout the State and in many municipalities.

Atlantic City also claims that it had the authority to enact the ordinance because of the general police power delegated in *N. J. S. A* 40:48–2 which provides that a municipality may make ordinances for the "protection of persons and property" and "for the preservation of the . . . welfare of

---

[3]The code provides that it is to be interpreted and construed, if possible, so as to effectuate its general purpose to make uniform the laws of those states which enact it. *N. J. S. A.* 12A:10–102.

the municipality and its inhabitants . . . ." This position is unsound. Recognition of the supremacy of the Code over the authority of the municipality to enact an ordinance governing the same bundle of rights and duties of the commercial transaction accords with the general principle set forth in *Township of Chester v. Panicucci*, 62 *N. J.* 94 (1973) :

> \* \* \* Municipalities have been granted broad police power over matters of local concern and interest, both in numerous specified instances, as here, by *N. J. S. A.* 40:48–1 and generally by *N. J. S. A.* 40:48–2. Our Constitution, Art. IV., § VII, par. 11, ordains liberal construction of those powers. Their scope, however, does not extend to subjects inherently in need of uniform treatment or to matters of general public interest and applicability which necessarily require an exclusive state policy. In addition, a municipality may be foreclosed from exercising power it would otherwise have if the state has sufficiently acted in a particular field. \* \* \* [O]ur cases establish that a municipality is precluded from exercising its powers in an area which the state has preempted. \* \* \* [62 *N. J.* at 99–100].

To the same effect, see *State v. Ulesky*, 54 *N. J.* 26, 29 (1969) ; *Wein v. Town of Irvington*, 126 *N. J. Super.* 410 (App. Div.), certif. den. 65 *N. J.* 287 (1974). This is not to say that the State does not have the power to modify, alter or add to the Code conditions similar to that adopted by Atlantic City.

I would declare the ordinance invalid.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.

*For reversal*—Justice SCHREIBER—1.