**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0340-25

L.M.,[1]

 Plaintiff-Respondent,

v.

I.M.,

 Defendant-Respondent.

_____

Submitted May 5, 2026 – Decided May 19, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0564-18.

The Weir Law Firm, LLC, attorneys for appellant (Bonnie M. Weir, on the briefs).

Legband & D'Onofrio, LLC, attorneys for respondent (Michele E. D'Onofrio, on the brief).

---

[1] Because of the privacy issues involved with this parenting time dispute over minor children, we use initials. <u>See</u> <u>R.</u> 1:38-3(d).

PER CURIAM

In this post-judgment matrimonial matter, defendant I.M. appeals from paragraphs one, two, and seven of an August 25, 2025 Family Part order denying his motion to modify the parties' parenting time schedule, find plaintiff L.M. in violation of litigant's rights, and for make-up parenting time. For the reasons that follow, we affirm.

I.

We summarize the pertinent history for this litigation. The parties were married in 2012 and divorced in 2018. Their final dual judgment of divorce incorporated a marital settlement agreement (MSA). The MSA provided the parties would share joint legal custody of their two children, E.M., born in 2015, and H.M., born in 2017, pending completion of Dr. Mathias R. Hagovsky's custody and parenting time evaluation. L.M. was designated as the parent of primary residence, and I.M. was designated as the parent of alternate residence without prejudice to either party's right to revisit parenting time after the evaluation was completed.

After Dr. Hagovsky completed his evaluation, the parties entered into a consent order on March 7, 2019, which modified the parenting time schedule set forth in the MSA. Paragraph three of the consent order set I.M.'s parenting time

2

A-0340-25

schedule as follows for one week: Monday at 5:30 p.m. to 7:30 p.m. and Wednesday at 5:30 p.m. through Thursday at 8:00 a.m.; and the following for the next week: Monday at 5:30 p.m. to 7:30 p.m. and Wednesday at 5:30 p.m. through Thursday at 8:00 a.m., and Friday at 5:30 p.m. through Monday at 8:00 a.m. Paragraph eight of the consent order states: "[i]f either party is unable to exercise their overnight parenting time, that other parent shall have the right of first refusal to accept the overnight parenting time."

Sometime in 2020, L.M. permitted I.M. to have parenting time with the children on the Fridays that fell on her parenting time weekends. She also permitted I.M. additional parenting time on his weekend, extending the usual 5:30 p.m. Friday start to be immediately after school, and then as planned through the weekend. At the time, H.M. was two years old. L.M. claims she provided I.M. with additional parenting time because she was attending graduate school and was unable to watch the children until she returned home. Although L.M.'s parents provided childcare for the children during his absence, L.M. claims she offered I.M. additional parenting time only as a "courtesy." According to L.M., the parties were working with a therapist in early 2020 to potentially transition to a fifty/fifty parenting time schedule. However, I.M.

3

A-0340-25

asserted L.M. was not prepared to comply, and that was the reason why she proposed the Friday parenting time.

On March 31, 2025, due to unrelated issues not before us regarding E.M., L.M. filed an order to show cause, which I.M. opposed. On April 11, 2025, the parties entered into a second consent order, which temporarily amended I.M.'s parenting time schedule with E.M. to supervised daytime parenting only. However, paragraph three of the consent order provided, "[d]efendant's parenting time with the parties' son, H.M.[,] shall not be impacted by this order." Thereafter, L.M.'s work schedule changed.

On June 13, 2025, L.M.'s counsel sent a letter to I.M.'s counsel stating she would now be able to exercise the entirety of her parenting time as set forth in the March 7, 2019 consent order and would no longer offer the additional Friday parenting time to I.M. The letter stated: "Moving forward my client would like her Fridays preceding her weekends with both E.M. and H.M. as per their [c]onsent [o]rder. If [I.M.] is off on Fridays, he may pick up H.M. on Friday at 9:00 [a.m.] preceding his weekend." L.M. explained this to I.M. via text message:

> I understand you are disappointed. However, I'm around on Fridays this summer and will be exercising my parenting time on the Fridays tied to my weekend. I've checked this with [my attorney] and per paragraph

4

A-0340-25

[thirty-one] in the MSA, since the Fridays were not in writing and signed with the same formality as the MSA, they are not binding.

On July 8, 2025, I.M. filed a motion seeking: (1) to officially recognize his parenting time with H.M. that L.M. had provided to him every Friday from 9:00 a.m. to 5:00 p.m.; (2) in the alternative, for compensatory parenting time with H.M. for the missed Friday's on L.M.'s weekend; and (3) sanctioning L.M. for violating the April 11, 2025 consent order by unilaterally depriving I.M. of the Friday visits on her weekend. In his moving certification, I.M. stated he changed his schedule to take off from work on Fridays, and the children enjoyed this time "over the last five . . . years." I.M. certified this schedule has been in existence "for half of our daughter's life and more than [seventy percent] of our son's life." According to I.M., H.M. "looks forward to this extra time[,]" which he and H.M. refer to as "Daddy Fridays." I.M. claimed L.M. should be sanctioned based on her "bad faith and blatant violation of the April 11, 2025 [c]onsent [o]rder."

In response, L.M. filed opposition to I.M.'s motion and a notice of cross-motion to enforce litigant's rights and for counsel fees. In her cross-moving certification, L.M. stated the March 7, 2019 consent order provided her with parenting time with the children "on the Fridays attached to [her] weekend."

5

A-0340-25

L.M. certified that in 2020, she was living with her parents and attending graduate school. L.M.'s parents were providing childcare for both children while she was "at school and studying." L.M. stated that I.M. "expressed his sadness over not having the children while [her] parents were watching [them] while [she] was going to school."

L.M. claimed she offered I.M. parenting time while she was at school in "good faith" and as a "courtesy to him," even though she was not required to do so pursuant to the terms of the consent order because "the right of first refusal is only triggered by the inability to care for the children overnight." L.M. certified she never agreed to modify the terms of the consent order to provide I.M. with parenting time on the Fridays attached to her parenting time weekend.

On August 25, 2025, the judge conducted oral argument on the motion and cross-motion via Zoom. That day, the judge entered an order accompanied by a comprehensive twenty-one-page statement of reasons. In his decision, the judge denied defendant's request for parenting time with H.M. every Friday from 9:00 a.m. to 5:00 p.m. and denied his request for compensatory parenting time with H.M. every week for each Friday that he claimed he was deprived of his parenting time.

A-0340-25

The judge relied upon paragraph three of the April 11, 2025 consent order, which states in relevant part: ". . . [d]efendant's parenting time with the parties' son, H.M., shall not be impacted by this order." The judge also cited paragraph twenty-five of the MSA, which provides: "[t]he parties agree that any dispute that may arise between them regarding the terms of this Agreement, shall be brought before an agreed upon Mediator for at least one session before any application shall be made to the [c]ourt." The judge highlighted the parties did not mediate their dispute, and "[t]hat alone is sufficient to deny their requests."

The judge determined defendant "may have enjoyed Friday parenting time in the past," but "he is not entitled to parenting time beyond what is set forth in the MSA." For this reason, the judge found plaintiff had not violated the April 11, 2025 consent order and thereby denied defendant's request for sanctions.

The judge granted plaintiff's request for defendant to have the right of first refusal for parenting time with H.M. on the Fridays preceding her parenting time weekend during the hours she may be working. The judge also granted plaintiff's cross-motion to enforce paragraph three of the March 7, 2019 consent order as it pertains to her parenting time. The judge ordered plaintiff to have parenting time with both children on the Fridays preceding her parenting time weekend. The judge's other rulings are not challenged on appeal.

7

Defendant raises the following issues on appeal:

(1) the judge erred in finding the MSA was not modified after five years of exercising Friday parenting time;

(2) the judge erred in failing to find plaintiff in violation of the April 11, 2025 consent order; and

(3) the judge erred in not awarding defendant make-up parenting time to address plaintiff's "self-help."

II.

We have routinely recognized the Family Part's "special jurisdiction and expertise in family matters." Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). As such, we will defer to the Family Part's factual findings and decision unless such decision constitutes as an abuse of discretion, i.e.: (1) its "findings are 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice[,]'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); (2) the court failed to consider all controlling legal principles, Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008); or (3) the court entered an order that lacks evidential support, MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007).

8

"In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citing Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)); see also Bisbing v. Bisbing, 230 N.J. 309, 322 (2017) (citing Beck v. Beck, 86 N.J. 480-96 n.8 (1981)) ("A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4.") "The court must focus on the 'safety, happiness, physical, mental and moral welfare' of the children." Hand, 391 N.J. Super. at 105 (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)).

N.J.S.A. 9:2-4(d) provides courts must order custody arrangements in accordance with the parties' agreement unless it is not in the best interests of the child. "Parties cannot by agreement relieve the court of its obligation to safeguard the best interests of the child." P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) (citing In re Baby M., 109 N.J. 396, 418 (1988)). "While custody agreements should be taken into account by the court, a trial court must determine whether the agreement is in the best interests of the children." Ibid. (citation omitted).

A-0340-25

It is also well-settled that a party seeking modification of an existing custody arrangement must demonstrate a change in circumstances. See R.K. v. F.K., 437 N.J. Super. 58, 62-63 (App. Div. 2014). To determine whether there are changed circumstances, the court must consider the circumstances that existed when the original custody order was entered. Sheehan v. Sheehan, 51 N.J. Super. 276, 287-88 (App. Div. 1958). After considering those facts, the court "may ascertain what motivated the original judgment and determine whether there has been any change in circumstances." Id. at 288. The party seeking to modify custody, however, must first demonstrate a substantial change of circumstances, which will affect the children's welfare, before the Family Part will consider the best interests of the children anew. See, e.g., Hand, 391 N.J. Super. at 105. We next apply these foundational principles to the matter before us.

## III.

I.M. argues the judge erred in denying his request for parenting time with H.M. on Fridays associated with L.M.'s weekend. We discern no error. The MSA expressly provides at paragraph thirty-one: "A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement." Moreover, the MSA

and the March 7, 2019 consent order clearly state I.M. would have parenting time "every other Friday."

The judge did not abuse his discretion in finding the parties' course of conduct did not modify the MSA custody provision or the March 7, 2019 consent order. "A written contract is formed when there is a 'meeting of the minds' between the parties, evidenced by a written offer and an unconditional, written acceptance." Morton v. 4 Orchard Land Tr., 180 N.J. 118, 129-30 (2004) (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538-39 (1953)). A contract modification is "a change in one or more respects which introduces new elements into the details of a contract and cancels others but leaves the general purpose and effect undisturbed." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation, 414 N.J. Super. 453, 466 (App. Div. 2010) (quoting Int'l Bus. Lists, Inc. v. Am. Tel. & Tel. Co., 147 F.3d 636, 641 (7th Cir. 1998)).

After forming the contract, the parties "may, by mutual assent, modify it." County of Morris v. Fauver, 153 N.J. 80, 99 (1998) (citing Bohlinger v. Ward & Co., 34 N.J. Super. 583, 587 (App. Div. 1955)). "A modification can be proved by 'an explicit agreement to modify or by the actions and conduct of the parties as long as the intention to modify is mutual and clear.'" Wells Reit II-80 Park Plaza, LLC, 414 N.J. Super. at 466 (quoting DeAngelis v. Rose, 320 N.J.

11

Super. 263, 280 (App. Div. 1999)). A court can find an agreement to modify a contract based on the parties' actions. See County of Morris, 153 N.J. at 99. Parties to a contract may orally agree to modify contract provisions, even when the original agreement precludes oral modifications. Sodora v. Sodora, 338 N.J. Super. 308, 312 (Ch. Div. 2000).

Regardless of the form of the purported modification, "[a] proposed modification by one party to a contract must be accepted by the other to constitute mutual assent to modify." County of Morris, 153 N.J. at 100. The parties must clearly and mutually intend to modify. Id. at 99. If a party to a contract "might reasonably infer that the original contract is still in force," modification of the contract is not established. Id. at 99-100.

In addition, an agreement to modify a contract "must be based upon new or additional consideration." Id. at 100 (citing Ross v. Orr, 3 N.J. 277, 282 (1949)). A court's determination of whether consideration was given should be based on "an objective examination of all of the relevant circumstances." Oscar v. Simeonidis, 352 N.J. Super. 476, 486 (App. Div. 2002). The value of consideration need not be substantial and "[w]hatever consideration a promisor assents to . . . is legally sufficient consideration." Id. at 485. An act or

forbearance of a legal duty that is not uncertain or doubtful is insufficient to establish consideration. Id. at 487.

I.M. contends L.M.'s and other individuals' "acknowledgment" and "outward manifestation" that she was not exercising parenting time on Fridays, and the children were always with him over the course of five years, establishes the parties' intention to modify the parenting time schedule. However, there was no evidence that L.M. assented to any modification. Moreover, contract modifications must be based upon new or additional consideration. Ross, 3 N.J. at 282. I.M. has failed to demonstrate any new consideration because L.M. was not provided anything in exchange for providing her Friday parenting time to him while attending graduate school. "[Any] proposed modification by one party to a contract must be accepted by the other to constitute mutual assent to modify" it. County of Morris, 153 N.J. at 100 (emphasis added). The record supports the judge's determination, and we reject I.M.'s argument.

IV.

Next, I.M. argues the judge erred in denying his motion in aid of litigant's rights to enforce the April 11, 2025 consent order under Rule 1:10-3. We disagree.

A-0340-25

Rule 1:10-3 provides in part that "[n]otwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action." The Rule provides a "means for securing relief and allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order." N. Jersey Media Grp., Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in original) (quoting In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17-18 (2015)).

A Rule 1:10-3 motion to enforce litigant's rights "is a means to 'coerce [a party] into compliance with the court's order.'" Abbott v. Burke, 206 N.J. 332, 342 n.3 (2011) (quoting Essex Cnty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App. Div. 1975)). Such a motion may also be brought to enforce compliance with a settlement agreement or consent order by specific performance. Jersey City Redevelopment Agency v. Clean-O-Mat Corp., 289 N.J. Super. 381, 404 (App. Div. 1996).

We review a trial court's adjudication of a Rule 1:10-3 motion for abuse of discretion. N. Jersey Media Grp., Inc., 451 N.J. Super. at 299. "Although the ordinary 'abuse of discretion' standard defies precise definition, it arises when a decision is 'made without a rational explanation, inexplicably departed from

14

established policies, or rested on an impermissible basis.'" <u>Flagg v. Essex Cnty.</u> <u>Prosecutor</u>, 171 N.J. 561, 571 (2002) (quoting <u>Achacoso-Sanchez v. Immigr. &</u> <u>Naturalization Serv.</u>, 779 F.2d 1260, 1265 (7th Cir. 1985)). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." <u>Ibid.</u>

Applying these principles, we discern no abuse of discretion. I.M. maintains the judge never referenced the specific parenting time schedule in his statement of reasons—the one stated in the MSA or the March 7, 2019 consent order, but only referenced I.M.'s "parenting time." I.M. contends the judge was not referring to the parenting time schedule established in the March 7, 2019 consent order, but the parenting time schedule the parties were presently exercising. I.M. asserts the judge should have awarded him compensatory parenting time under <u>Rule</u> 5:3-7(a), which states:

> On finding that a party has violated an order respecting custody or parenting time, the court may order, in addition to the remedies provided by <u>R[ule]</u> 1:10-3, any of the following remedies, either singly or in combination: (1) compensatory time with the children . . . (6) temporary or permanent modification of the custodial arrangement provided such relief is in the best interest of the children.
>
> [<u>R.</u> 5:3-7(a).]

A-0340-25

As we stated, the judge correctly found the parties' course of conduct did not create a modification of the MSA or the parenting time schedule set forth in the March 7, 2019 consent order. Therefore, L.M.'s retraction of the additional Friday parenting time day did not constitute a violation of the April 11, 2025 consent order, notwithstanding the wording that I.M.'s parenting time with H.M. "shall not be impacted by this order." Contrary to I.M.'s argument, nothing in the April 11, 2025 consent order references the parties' voluntary parenting time schedule at the time. We conclude L.M. did not violate the April 11, 2025 consent order. Therefore, I.M. was not entitled to compensatory parenting time under Rule 5:3-7(a).

To the extent we have not addressed any of I.M.'s remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

16

A-0340-25