169 N.J. Super. 288 (1979)
404 A.2d 1186
ORANGE TAXPAYERS COUNCIL, INC., A NEW JERSEY CORPORATION, THE TERRACE, INC., A NEW JERSEY CORPORATION, ARTHUR CLAY, ROBERT MAGNUS AND CORA MAGNUS, T/A ORANGE TOWERS, ET AL., PLAINTIFFS-RESPONDENTS,
v.
CITY OF ORANGE, A MUNICIPAL BODY POLITIC OF THE STATE OF NEW JERSEY, THE RENT LEVELING BOARD OF THE CITY OF ORANGE, EDWARD FERRARI, MARION STEWART, KENNETH CONDON, BEVERLY SAVAGE, RALPH PERRELLA, BRENDA HARRINGTON, ORANGE TENANTS ASSOCIATION, ALSO KNOWN AS "OTA," AND BARBARA DAVIS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1979.
Decided June 20, 1979.
*291 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. David Ben-Asher argued the cause for appellants City of Orange, The Rent Leveling Board of the City of Orange, *292 Edward Ferrari, Marion Stewart, Kenneth Condon, Beverly Savage, Ralph Perrella and Brenda Harrington (Messrs. Baumgart & Ben-Asher, attorneys).
Ms. Joan Pransky argued the cause for appellants Orange Tenants Association and Barbara Davis (Essex-Newark Legal Services Project, attorneys; Messrs. Edward Tetelman, Harris David and Louis Raveson on the brief),
Respondents did not file a brief or appear at oral argument.
The opinion of the court was delivered by BISCHOFF, J.A.D.
Defendants City of Orange, the Rent Leveling Board of the City of Orange, the Orange Tenants Association and individual tenants appeal, with leave granted, from summary judgment declaring invalid and unenforceable an amendment to the rent leveling ordinance of the City of Orange which (1) repealed the tax surcharge provision thereof and (2) required "substantial compliance" with the Orange property maintenance code as a condition precedent to an increase in rents.
The relevant facts follow. The City of Orange adopted a rent leveling ordinance November 10, 1972 based on factual findings that (1) the board of commissioners had received numerous complaints from citizens in the city concerning increases in rents and deterioration of dwelling units, causing hardship and adversely affecting the health, safety and general welfare of the citizens, and (2) there was a shortage of housing space in the city warranting legislative action by the governing body.
The ordinance created a rent leveling board with powers to promulgate rules and regulations and to adjudicate applications from landlords for additional rent. This ordinance, as originally enacted, authorized landlords in Orange to raise rents by either (1) a tax surcharge, (2) a consumer price *293 index (CPI) or percentage increase, and (3) a hardship increase.
The Tax Surcharge. Section 5 of the ordinance originally allowed a landlord to charge a tenant for increases in municipal taxes and provided a formula for apportioning any increase in taxes levied against the property among the tenants. On April 2, 1974 this section was amended to provide:
A separate tax surcharge shall be allowed for each and every year the taxes of the landlord are increased above the 1972 tax base * * *.
The CPI Increase. Section 2 of the 1972 ordinance allowed a landlord to increase rent by an amount equal to a base rent (the 1972 level), multiplied by the percentage increase in the consumer price index for the relevant period. The ordinance provided that the tax surcharge shall not be considered rent for purposes of computing the CPI rental increases. In March 1974 this provision was amended to limit the CPI increase to a maximum of 4% a year.
The Hardship Increase. Section 10 of the ordinance provided that if "a landlord cannot meet his mortgage payments and maintenance," he could appeal to the rent leveling board for a "hardship increase." A landlord could also "seek additional rental for major capital improvements or services." The capital improvement increase was limited to 15% of a tenant's rent.
The city council later amended the provision. As modified it reads in part:
In the event that a landlord cannot meet his mortgage payments, and maintenance and or usual customary and normal cash flow expenses of operating a multiple dwelling property, he may appeal to the Rent Leveling Board for an increase in rentals. * * *
On January 15, 1974 § 10 of the ordinance was amended to require a landlord be in "substantial compliance" with health and safety codes in order to "petition for a rent *294 increase." When petitioning for an increase in rent, an apartment owner was required to attach a certification from the Property Maintenance Department of the City of Orange that the buildings and grounds were substantially in compliance with the Property Maintenance Code of the City and the Property Maintenance Code of the State of New Jersey. Affidavits filed with the trial court indicated that in actual operation hardship applications were generally processed within two months and when granted were retroactive to the date of filing. It was also averred that the rent leveling board processed hardship applications upon submission of certificates from the Orange Property Maintenance Department alone. The yearly 4% increments were granted as a matter of course where a landlord posted his own certificate of compliance in the apartment building.
This rent control law generated many conflicts between landlords and tenants in the City of Orange. Open public meetings were held at which evidence of landlord abuse in computation of rental increases and accumulation and addition of tax surcharges was revealed.
The city council thereafter adopted an ordinance on August 17, 1976, effective September 19, 1976, repealing all sections of the rent leveling ordinance permitting a tax surcharge. Due to uncertainty concerning the retroactivity of the repeal ordinance the city council passed a resolution on March 1, 1977, interpreting the ordinance and declaring (1) the repeal of the tax surcharge was effective September 19, 1976 and applied to all tax surcharges after that date, and (2) the tax surcharge was separate and apart from basic monthly rent.
On March 10, 1977 plaintiffs, a corporation of landlords, together with individual apartment house owners, filed a verified complaint in lieu of prerogative writs alleging, among other matters, that the tax surcharge repeal provision and the substantial compliance provision of the Orange rent control ordinance were void as an arbitrary and capricious exercise of the police power preventing a fair return on invested capital. Plaintiffs sought a judgment declaring these provisions *295 null, void and unenforceable. Following argument on cross-motions for summary judgment supported by affidavits, the trial judge ruled as follows.
(1) The tax surcharges "cumulated from 1972" constituted rent and their elimination by the repealing ordinance constituted a rollback of rents. Relying on Albigese v. Jersey City, 127 N.J. Super. 101 (Law Div.), mod. and aff'd 129 N.J. Super. 567 (App. Div. 1974), the judge held that municipal authorities enacting such regulations must "have either a well supported factual finding as to the need to do so and limited its action to that purpose or acted on a temporary basis." He found the record "barren of any facts upon which the Council acted to generally roll back the portion of rent based upon taxes to the level of the base year 1972" and declared the portion of the ordinance repealing the tax surcharge unconstitutional.
(2) In an issue raised on his own motion the judge held the rollback provisions of the repealing ordinance in conflict with, and therefore preempted by, the Tenants' Property Tax Rebate Act, N.J.S.A. 54:4-6.2 et seq. (L. 1976, c. 63, § 1).
(3) The section of the ordinance requiring production of a certification demonstrating substantial compliance with property maintenance codes in order to obtain a rental increase was unrelated to the purpose of rent control and hence invalid.
A judgment was entered consistent with the trial judge's opinion declaring, among other things, that the sections of the ordinance repealing all tax surcharge provisions and the "certification requirements" invalid. This appeal followed.
Appellants contend that the trial judge erred in striking the ordinance repealing the tax surcharge pass-through provision in the original rent control ordinance because:
(1) The major premise of the trial judge that the tax surcharge constitutes rent was wrong;
(2) The judge applied the wrong standard of proof; and
*296 (3) The hardship clause of the rent control mechanism provides a means whereby a landlord may receive a fair and reasonable return.
We observe at the outset that in order for a rent control ordinance to survive a constitutional challenge, it must be nonconfiscatory as applied, as well as nonconfiscatory on its face. Troy Hills v. Parsippany-Troy Hills, 68 N.J. 604, 620 (1975); Hutton Pk. Gardens v. West Orange, 68 N.J. 543, 568-570 (1975).
This matter was decided on motion for summary judgment. There is no record for our review, nor was any discovery taken. Accordingly, we are wholly unaware of any facts concerning the quantum or sufficiency of the return on the landlords' investment. Moreover, the landlords did not attempt to obtain an increase in rent, nor a fair and reasonable return on their investment by seeking a hardship increase from the applicable administrative body, the rent leveling board. Since plaintiffs did not apply to the board for a rental increase, we do not know to what extent the available administrative procedure would have mitigated the claim of insufficient return on investment.
Since no evidence was taken relevant to the effect of the amended ordinance as depriving plaintiffs of a fair rate of return on their investment, the issue of the effect of the ordinance as applied is not before us. The only record we have before us thus allows no more than an attack on the facial constitutionality of the ordinance repealing the tax surcharge passthrough provisions.

FACIAL CONSTITUTIONALITY
The power of municipalities to enact rent control ordinances was sustained in Inganamort v. Fort Lee, 62 N.J. 521, 537-538 (1973). Such ordinances carry a presumption of validity, placing a heavy burden upon the party seeking to overturn them. Hutton Pk. Gardens, supra 68 N.J. at 564, and to succeed a plaintiff must show by clear *297 and convincing evidence that the ordinance has a widespread confiscatory effect upon efficient landlords. Helmsley v. Fort Lee, 78 N.J. 200, 218 (1978). This test is similarly applicable when considering the validity of an ordinance amending an existing ordinance by repeal or otherwise.
A basic inquiry in reviewing any rent control scheme is to determine whether it "permit[s] an efficient landlord to realize a `just and reasonable return' on his property," Helmsley v. Fort Lee, supra at 204; Hutton Pk. Gardens, supra 68 N.J. at 568; Troy Hills, supra 68 N.J. at 620, and judicial review of such measures in this respect is limited to determining whether the return permitted by an ordinance does afford a landlord a "minimum constitutional return" on his investment. Helmsley v. Fort Lee, supra 78 N.J. at 242.
The conspicuous absence of any evidence concerning the landlords' rate of return under the challenged rent control mechanism precludes a finding that the ordinance has a confiscatory effect in operation. Hutton Pk. Gardens, supra 68 N.J. at 570-571; Modular Concepts v. South Brunswick Tp., 146 N.J. Super. 138, 143 (App. Div.), certif. den. 74 N.J. 262 (1977). We are thus limited to a consideration of the facial constitutionality of the rent control scheme. While rent control ordinances can be written so restrictively as facially to preclude any possibility of a just and reasonable return, we do not find the ordinance herein falls into that category. Hutton Pk. Gardens, supra 68 N.J. at 571. Rent control schemes with far more stringent controls on rent increases for capital improvements, tax increases and hardship conditions have been approved as facially constitutional[1].
It is true, as asserted by the trial judge, that "no section of the ordinance provides for a fair return to the landlord." *298 However, the absence of such a specific provision is not fatal. In considering this same contention in Hutton Pk. Gardens, supra, the court said:
* * * An ordinance is not rendered facially unconstitutional by the fact that it does not expressly include a provision assuring a just and reasonable return in its regulatory mechanism. * * * Every rent control ordinance must be deemed to intend, and will be so read, to permit property owners to apply to the local administrative agency for relief on the ground that the regulation entitles the owner to a just and reasonable rate of return. [68 N.J. at 572, citation omitted]
The Orange rent control ordinance in its present form provides for rental increases by (a) yearly automatic CPI increases, (b) increases based on capital improvements and (c) hardship increases. We must assume that the ordinance will be utilized by landowners and administered by the rent leveling board in a manner as to provide a just and reasonable rate of return.
In determining whether a just and reasonable rate of return is being allowed, all components of the return received must be considered. For this purpose it is immaterial whether the return be divided into component parts and designated taxes, rent or capital improvements, and while we disagree with the conclusion of the trial judge that the tax surcharge herein "cumulated between 1972 and 1976" became rent rather than a return of taxes, the actual designation of the character of the sums received is of little significance. Facial constitutionality does not require that a landlord recover any particular operating expense designated rent, taxes or otherwise. It requires simply that the landlord be permitted to obtain a fair and just return. Brunetti v. New Milford, 68 N.J. 576, 598 (1975); Helmsley v. Fort Lee, supra 78 N.J. at 223. This ordinance is not facially invalid as failing to provide a suitable mechanism whereby a landlord may obtain a fair and reasonable return.
We proceed to a consideration of two additional rulings of the trial judge which require our attention.

*299 PREEMPTION

The trial judge concluded that the ordinance repealing the tax surcharge pass-through provision of the rent control ordinance effectively "establish[ed] tenants' liability for taxes at 1972 levels" and yet, under §§ 4 and 5 of the Laws of 1976, c. 63 (N.J.S.A. 54:4-6.2 et seq., Tenants' Property Tax Rebate Act), "the landlord was required to refund in cash part of the tax reduction based on 1977 taxes." He observed that the Legislature specifically decreed 1976 as the base year for all tax reduction adjustments and that tenants receive 65% thereof while, on the other hand, the rent control ordinance "specifies a base year of 1972 and tenants receive a reduction of 100%." He reasoned:
* * * If the ordinance is upheld, then the combination of the ordinance and the laws is that the tenants first have rents reduced to 1972 levels for taxes and then are entitled to receive a cash rebate from the landlord for any reductions from 1976 tax levels. In other words, the tenants will receive a rebate for taxes they did not contribute to.
The trial judge concluded that when the Legislature adopted the Tenants' Property Tax Rebate Act (hereafter Rebate Act), it must be presumed to have acted with knowledge of the widespread use of tax surcharges in municipal rent control ordinances. Repeal of the surcharge allowance in Orange would in effect cause landlords to forfeit the accumulated surcharges and pay tenants a cash rebate of up to 65% of a tax rebate received by the landlord on taxes which the tenants never paid. Applying the doctrine of preemption, the Law Division declared the repeal ordinance invalid.
We disagree. The Legislature adopted the Rebate Act, N.J.S.A. 54:4-6.2 et seq., as part of a comprehensive tax plan. The Rebate Act sought to insure that tenants would receive part of the tax relief granted to landlords. A legislative statement accompanying the Rebate Act explained:
Pending tax reform legislation would levy an income tax on both homeowners and tenants in order to reduce property tax burdens. *300 But since tenants pay property taxes directly through their landlords, without some type of passthrough mechanism * * *, landlords would reap a windfall from any property tax scheme. [L. 1976, c. 63 § 1546 (1976)]
While a predicate of the Rebate Act is that tenants pay taxes to their landlord, the act is not concerned with the method by which the payment is made, and for the purpose of the Rebate Act it is immaterial whether the tenant pays taxes through rent, tax surcharge or other means. Undoubtedly, tenants will pay property taxes by some means, if only indirectly. They are also subject to the new state income tax which is a component part of the comprehensive tax package. N.J.S.A. 54:8A-1 et seq. These payments fairly entitled the tenant to share in a portion of the rebate the landlord will receive under the Rebate Act.[2]
We do not agree that in resolving an issue of law on summary judgment the court may presume that the Legislature was aware of the widespread use of tax surcharges as part of the rent control mechanism. Evidence exists to support the contrary. At the time the Legislature adopted the Rebate Act the opinions in Hutton Pk. Gardens, Brunetti and Troy Hills Village, all supra, had been published. The Legislature must be presumed to know that municipalities had enacted rent leveling ordinances both with and without tax surcharge provisions. Whether either one could be classified as widespread is subject to proof and on this record was not an appropriate subject of judicial notice. In any event, it is reasonable to conclude that had the Legislature intended to preempt this field it would have expressly said so. The conclusion that the Legislature somehow froze the existing tax surcharge provisions by passage of the Rebate Act cannot be sustained by the record.
*301 Absent an express declaration to that effect, a state law will be found to preempt a municipal ordinance only if it can be determined that the Legislature so intended. Summer v. Teaneck, 53 N.J. 548, 554 (1969); Coast Cigarettes Sales v. Long Branch, 121 N.J. Super. 439, 445 (Law Div. 1972). Municipal ordinances, as well as statutes, are accorded a presumption of validity, Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289, 298 (1976), and a finding of preemption must clearly appear. Summer v. Teaneck, supra 53 N.J. at 555; see also Jeselsohn, Inc. v. Atlantic City, 70 N.J. 238 (1976).
As we stated above, the Rebate Act is part of a comprehensive tax plan. A rent control ordinance is a complex plan responsive to the local problems and conditions pertaining to housing enacted under the police power of the municipality. Inganamort v. Fort Lee; Helmsley v. Fort Lee, both supra.
In Overlook Terrace Management v. West New York Rent Control Bd., 71 N.J. 451 (1976), the court found that a state statute had preempted a municipal ordinance where the New Jersey Housing Agency, a state agency exercising a public and essential function in financing, supervising and regulating moderate-income housing, ordered rental increases in conflict with a municipal rent control ordinance which restricted rental increases. After analyzing the questions which must be considered in determining the applicability of the doctrine of preemption, id. at 461, the court concluded that the State had preempted the subject of fixing rent control within the housing project. No such conflict exists here. The Rebate Act and Orange municipal rent control may exist side-by-side within the municipality with but minor overlap and a minimal conflicting impact upon the citizen, be he landlord or tenant.[3]
*302 The Rebate Act was enacted for purposes wholly unrelated to housing problems existing in the City of Orange and should not be construed to preempt local initiative toward unrelated subjects. We discern no irreconcilable conflict between the two. Overlook Terrace Management, supra at 461. Whatever minimal sum a landlord may be compelled to rebate to a tenant will in any event be part and parcel of the entire costs and expenses which constitute the ingredients of "a just and reasonable return" which he is entitled to receive on his investment.

SUBSTANTIAL COMPLIANCE
Section 4B of the rent leveling ordinance requires a landlord seeking a CPI increase in rents to attach to the notice of an increase in rents his own certification that the "dwelling and housing space is in substantial compliance with the applicable property maintenance code." Section 5 of the ordinance provides that when a landlord seeks either a hardship increase or a capital improvement increase, he must file with his petition for an increase, a certification from the Property Maintenance Department of the City of Orange that the buildings and grounds are in substantial compliance with the property maintenance code. "Substantial compliance" is defined in the ordinance as follows:
Substantial Compliance means that the housing space and dwelling are free from all heat, hot water, elevator and all health, safety and fire hazards as well as 90% qualitatively free of all other violations of the Orange Property Maintenance Code and the Property Maintenance Code of the State of New Jersey where applicable.
The trial judge concluded that (1) these provisions of the ordinance are not reasonably related to the purposes of rent control, (2) they have "a draconian consequence of an added penalty for violation of the code" and (3) "the landlord seeking an increase to cure violations by a capital improvement or hardship increase cannot even file the petition *303 because such a landlord could not get the certification." Relying on the case of Modular Concepts v. South Brunswick Tp., supra, he held the certification requirement invalid.
Such reliance was misplaced. The ordinance before the court in Modular Concepts was different in material respects from the ordinance involved here. For example, the South Brunswick ordinance required substantial compliance with "all existing State, county and local health and building codes." The court was there concerned that "any violation no matter how trivial * * * may provide the occasion for the rejection of a requested increase," id. 146 N.J. Super. at 146, and application to multiple agencies for certification was required. To the contrary, here the landlord need apply to only the municipal agency for certification, eliminating the multiple step certification. Further, the record here indicates there is a mechanism for prompt resolution of disputes in the event of a denial of the certification and the definition of "substantial compliance" with its precise standards indicates a careful restraint on the reasons and basis for denial of certification.
In the exercise of its police power Orange promulgated rent control laws not only to monitor increases in rents, but also to prevent deterioration of housing units. The coupling of certain rental increases with proof of the basic habitability of the rental unit is a reasonable and effective act authorized by the police power. Rent control would be self-defeating were landlords permitted to reduce maintenance expenditures and allow buildings to deteriorate because their profits have been regulated downward. See Hutton Pk. Gardens, supra; Inganamort v. Fort Lee, 120 N.J. Super. 286 (Law Div.), aff'd in part, rev'd in part, 62 N.J. 521 (1972).
The relationship between the habitable condition of the leasehold and the right of the landlord to receive the full rent or a diminished rent because of the uninhabitable condition of the building is now well recognized. Berzito v. Gambino, 63 N.J. 460 (1973); Marini v. Ireland, 56 N.J. *304 130 (1970). Facially, these "substantial compliance" provisions of the City of Orange rent control ordinance are not invalid. Significantly, plaintiffs do not allege or demonstrate harm suffered because of any unreasonable delay or unreasonable rejection of certification.
We hold it was error for the trial judge, on this record, to hold the substantial compliance provisions of the rent control ordinance invalid.
We conclude the matter must be remanded to the Law Division for consideration of plaintiffs' attack on the constitutionality of the ordinance as applied. As we noted above, plaintiffs have not applied to the rent control board for a hardship increase or for other relief. It is obvious that unless such an application is made plaintiff will never know whether an acceptable increase will be granted. We therefore suggest that before proceeding to consider whatever other objections plaintiffs may have to the challenged ordinance, the trial judge may wish to consider requiring plaintiffs to exhaust their administrative remedies. Brunetti v. New Milford, supra 68 N.J. at 588.
To summarize our holding:
(1) The rent control ordinance of the City of Orange insofar as it repeals the pre-existing tax surcharge passthrough provision, is facially constitutional and valid.
(2) The Tenants' Property Tax Rebate Act (N.J.S.A. 54:4-6.2) neither preempts the field of municipal rent control nor prevents repeal of tax surcharges allowed incident thereto.
(3) The substantial compliance provisions of the rent control ordinance of the City of Orange are not facially invalid.
Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] See the rent control ordinances approved on their face in Hutton Pk. Gardens v. West Orange, supra at 552-553, Brunetti v. New Milford, 68 N.J. 576, 583, and Troy Hills v. Parsippany-Troy Hills, supra 68 N.J. at 613-614.
[2] The Rebate Act is discussed in depth and held constitutionally valid in Cold Indian Springs Corp. v. Ocean Tp., 154 N.J. Super. 75 (Law Div. 1977), aff'd 161 N.J. Super. 586 (App. Div. 1978).
[3] In Central Towers Co. v. Fort Lee, 160 N.J. Super. 223 (Law Div. 1978), the court interpreted and applied the Rebate Act to a plaintiff landlord in a municipality with an existing rent control ordinance but did not discuss the issue of preemption.