194 N.J. Super. 34 (1984)
476 A.2d 271
PARSIPPANY HILLS ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP AND CLEARVIEW GARDENS ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP, PLAINTIFFS-APPELLANTS,
v.
RENT LEVELING BOARD OF THE TOWNSHIP OF PARSIPPANY-TROY HILLS AND TOWNSHIP COUNCIL OF THE TOWNSHIP OF PARSIPPANY-TROY HILLS, AND THE TOWNSHIP OF PARSIPPANY-TROY HILLS, A MUNICIPAL CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1983.
Decided March 16, 1984.
*39 Before Judges BOTTER and O'BRIEN.
Paul L. Black argued the cause for appellants.
Debra K. Donnelly argued the cause for respondents (Alfred J. Villoresi, attorney; Edward J. Buzak and Debra K. Donnelly, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
The trial judge affirmed a decision of defendant township council which had affirmed a decision of defendant rent leveling board. That decision required plaintiffs-appellants landlords to rebate to their tenants 75% of the net reduction in real estate taxes resulting from decisions by the Tax Court which reduced assessments on their properties. The action was dismissed against the rent leveling board on the court's own motion. Rebates were ordered for the years 1977, 1978 and 1979. Although the reduced taxes would also apply to 1980 and 1981, the rent leveling board did not deal with those years and the trial judge remanded to the rent leveling board for consideration of those years.
Prior to the judgments of the Tax Court on the landlords' tax appeals, appellants had rebated to their tenants 65% of the amount by which their taxes went down in the years 1977, 1978 and 1979, as compared with the base year of 1976, pursuant to the Tenants' Property Tax Rebate Act, N.J.S.A. 54:4-6.2 et seq.
The decisions of the Tax Court were rendered on May 22, 1980 as to Clearview Gardens Associates (Clearview), and May 29, 1980 as to Parsippany Hills Associates (Parsippany), and dealt with the assessments of these properties for the years *40 1975, 1976, 1977 and 1978. The parties agreed to the same reductions for 1979 and 1980.[1]
The assessment of the Parsippany property was reduced from $1,400,000 to $1,007,925 for 1975, 1976 and 1977, and to $971,535 for 1978, 1979 and 1980. Clearview's assessment was reduced from $360,000 to $260,855 for 1975, 1976 and 1977, and to $251,437 for 1978, 1979 and 1980. The parties agree that the dollar amounts of tax reductions which the township council ordered to be rebated to the tenants for the pertinent years are as follows:[2]

 YEAR PARSIPPANY CLEARVIEW
 1977 $18,270.70 $4,639.99
 1978 19,752.24 5,004.75
 1979 19,795.08 5,037.32

The municipality adopted a rent leveling ordinance (No. 73:449) on April 24, 1973. Section 5 of that ordinance provided, in pertinent part,
A landlord may seek a tax surcharge from a tenant because of an increase in municipal property taxes.
A formula was provided for computation of the surcharge. Section 6 required the landlord seeking a surcharge to notify his tenant of the calculations. Section 7 provided that the tax surcharge be paid in six monthly payments commencing July 1 of each year. Section 8 provided that the tax surcharge shall not be considered rent for purposes of computing cost of living rental increases. Section 9 read as follows:

*41 In the event a tax appeal is taken by the landlord and the landlord is successful in said appeal and the taxes reduced, the tenant shall receive fifty (50) percent of said reduction as applied to its tax portion, after deducting all expenses incurred by landlord in prosecuting said appeal.
On November 12, 1973 the municipality adopted Ordinance No. 73:472, which amended Section 9 to increase the percentage from 50% to 75%.
On October 12, 1978 the municipality adopted Ordinance No. 78:24, amending the rent leveling ordinance, effective October 31, 1978. Sections 5, 6, 7 and 8 were repealed. The new Section 5 established a form of vacancy decontrol and Section 6 authorized the landlord to add permitted C.P.I. formula increases to increases allowed under the vacancy decontrol. Section 7, as amended, reads as follows:
The landlord can, at the time of the next permissible rent increase, add to the base rent the total tax surcharges previously passed through or reserved.
Section 8 provided that the landlord waives permissible rent increases not charged and Section 9 was amended to read as follows:
In the event a tax appeal is taken by the landlord and the landlord is successful in said appeal and the taxes reduced, the tenant shall within 120 days of the final judgment receive seventy-five (75%) percent of said reduction as applied to its tax portion, after deducting all expenses incurred by landlord in prosecuting said appeal.
Subsequent to the filing of this appeal the rent leveling ordinance of the township expired by its own terms on March 21, 1983.[3] Neither the original rent leveling ordinance adopted April 24, 1973, nor any of the amendments adopted thereafter contained a savings clause with respect to rights accrued under *42 the ordinance in the event of expiration or repeal.[4] In light of the expiration of the ordinance, appellants filed a motion for summary disposition or for leave to supplement the record by filing a supplementary brief. The parties were given leave to file supplementary briefs addressed to the effect of the expiration of the ordinance.
Both parties agree that the rules as to the effect of the repeal of a statute govern as well the effect of the repeal of a municipal ordinance, 62 C.J.S., Municipal Corporations, § 438a, p. 839, and that the legal effect of the expiration of the ordinance by its own limitation is the same as though it had been repealed at that time. As a general rule the repeal of a statute without any reservation takes away all remedies given by the repealed statute and defeats all actions and proceedings pending under it at the time of its repeal. The rule is especially applicable to the repeal of statutes creating a cause of action, providing a remedy not known to the common law, or conferring jurisdiction where it did not exist before. The repeal abates proceedings pending even after judgment, but before the entry thereof or pending on appeal. 82 C.J.S., Statutes, § 439, p. 1012-1013; see 5B C.J.S., Appeal & Error, § 1841, p. 244.
In this State it is the general rule that where a statute is repealed and there is no saving clause or a general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect, is considered as though it had never existed, except as to matters and transactions passed and closed. DiAngelo v. Keenen, 112 N.J.L. 19, 20-21 (Sup.Ct. 1933), aff'd o.b. 115 N.J.L. 507 (E. & A. 1935). Furthermore, it is settled law in this State that, unless vested rights are involved, the law in effect at the time of the disposition of the *43 cause by an appellate court governs, rather than the law in effect at the time the cause was decided by the trial court. Staudter v. Elter, 64 N.J. Super. 432, 436 (App.Div. 1960). Thus, unless the tenants have a vested right, the expiration of the ordinance would terminate the right to a rebate.
The tenants argue that the repeal of an ordinance cannot disturb private rights, causes of action or the substance of remedies vested under it, citing 6 McQuillin, Municipal Corporations, §§ 21.40, 21.45 and see § 21.15 (3d Ed. 1980); also see Stockhold v. Jackson Twp., 136 N.J.L. 264, 265-266 (E. & A. 1947); Hunt v. Gulick, 9 N.J.L. 205, 207 (Sup.Ct. 1827).
The term "vested right" is an elusive term often defined in the context of a given situation. Our Supreme Court framed a general definition in Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 384-385 (1954), as follows:
The term "vested right" is not defined in either the Federal or the State Constitution; but it would seem that, generally, the concept it expresses is that of a present fixed interest which in right reason and natural justice should be protected against arbitrary state action  an innately just and imperative right that an enlightened free society, sensitive to inherent and irrefragable individual rights, cannot deny. Such seems to be the principle of Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885).
Whether the tenants have a "vested right" to the rebates under the now expired ordinance is a close question. We are told that in addition to the parties in this case, there is a class action pending against 24 owners of multi-unit apartment complexes in the Law Division seeking to compel rebate of tax monies returned to landlords as a result of successful tax appeals for the years 1975 through 1982.
Plaintiffs argue that the rent leveling ordinance was in derogation of the common law and that the expiration of that ordinance reinstates the general or common law. It is argued that the failure of the governing body to reenact the rent control ordinance "eloquently" attests to the passing of the emergency which necessitated rent control in the first place. See Inganamort v. Boro. of Fort Lee, 120 N.J. Super. 286 (Law Div. 1972), aff'd 62 N.J. 521 (1973). While there is some appeal *44 to that argument, we reject it. When the Tax Court judgments were rendered in May 1980, reducing the landlords' assessments and thereby entitling them to a refund of taxes paid as computed on the old assessments, the tenants became entitled to receive a rebate of 75% of the net tax refund due the landlord within 120 days of the final Tax Court judgments. Before this appeal was filed the rent leveling board, the town council and the Law Division of this court all affirmed the tenants' right to such a rebate and the monies were deposited in an escrow account. While the issue is not without some doubt, we have concluded that the tenants' rights to rebates were vested as that term is defined in Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. at 384. Thus, the expiration of the ordinance, amounting to repeal, did not divest them of that right, if they were otherwise entitled to such rebates.
We turn then to the substantive questions. Appellants urge a variety of arguments. First they contend that the ordinance should be construed as requiring tax rebates to the tenants only when those tenants have been paying a surcharge. Since the taxes went down for the years 1977, 1978 and 1979, there were no tax surcharges.[5] As authority for this contention appellants cite Leone Management Corp. v. Bd. of Comm. West New York, 130 N.J. Super. 569 (Law Div. 1974), aff'd o.b. 144 N.J. Super. 353 (App.Div. 1976), in which Judge Larner said:
The West New York ordinance provides for a tax refund of 75% of any net tax reduction obtained by the landlord through a tax appeal or through the normal processes of diminution of assessment or tax rate. (§§ 9 and 10). It is manifest that this refund is payable only if a tax surcharge has been paid by the tenant and to the maximum extent of said tax surcharge. Counsel for the municipality has conceded that such is the intent and purpose of the refund provisions. In case of doubt, they are hereby construed in that manner; and as such there can be no objection to their validity. The computation should be made on the same basis as that properly applied to the tax surcharge. [130 N.J. Super. at 580]
*45 That decision was rendered on October 17, 1974. However, the original Section 9 of the West New York ordinance, requiring the landlord to rebate 50% of a tax reduction, was amended on March 30, 1974 to increase the rebate to 75% with the provision added: "in cases in which the tenant is paying a surcharge." If the West New York ordinance contained this amendatory language at the time of Judge Larner's decision, it is obvious why counsel conceded that to be the intent of the ordinance and why the court so ruled.
Appellant further argues that the same conclusion was reached by this court in Hilltop Associates v. Edison Tp., 181 N.J. Super. 100 (App.Div. 1981), certif. den. 91 N.J. 231 (1982), where the court said:
At oral argument we were advised that, following a tax reduction as the result of a successful tax appeal, any tax surcharge would be reduced in that amount in the ensuing tax year. That protection to tenants is in addition to the requirement under § 55-9 that landlords rebate to tenants 100% of such tax reduction less reasonable expenses, that is, refund that amount to tenants from the tax surcharge previously collected from them. The municipal legislative scheme is that tenants are surcharged 100% of tax increases and receive the benefit of 100% of net tax reductions resulting from tax appeal judgments. [Emphasis supplied.] [181 N.J. Super. at 103]
Although this language does seem to support appellants' position, removal of the tax surcharge by the 1978 amendment to the ordinance clearly indicates a legislative intent to require a rebate notwithstanding lack of provision for a surcharge.
Appellants also point out that the amended ordinance retained the language from the earlier versions of Section 9, "as applied to its tax portion." They conclude from this that there is no "tax portion" without a surcharge unless the landlord adds to his base rent a previously granted surcharge as permitted by Section 7 of the amendatory ordinance. However, this argument ignores the fact that tenants pay property taxes indirectly as part of their rent. See Orange Taxpayers Council, Inc. v. City of Orange, 169 N.J. Super. 288, 300 (App.Div. 1979), aff'd 83 N.J. 246 (1980).
*46 While the phrase "as applies to its tax portion" is ambiguous, elimination of the tax surcharge provisions of the ordinance by amendment in 1978 makes it clear that the tax rebate provision was intended to apply even in the absence of a tax surcharge mechanism.
We now turn to a different issue. Did the enactment of the Tenants' Property Tax Rebate Act, N.J.S.A. 54:4-6.2 et seq., preempt the field and thus render Section 9 of this rent leveling ordinance invalid? As noted, these tenants have received the rebate required under the State statute. It has been held that the Tenants' Property Tax Rebate Act did not preempt the field. Hilltop Associates v. Edison Tp., 181 N.J. Super. 100 (App.Div. 1981). In Hilltop we concluded that the Tenants' Property Tax Rebate Act was not a general enactment preempting the legislative subject of rebates to tenants following tax reductions. The court reasoned that the act has a limited future effect, since it only relates to reductions of taxes below those assessed in 1976 which are becoming increasingly less likely. For example, in 1981 taxes on a given property may be lower than in 1980 but still more than in 1976, in which case there would be no refund under the act. See also Orange Taxpayers Council, Inc. v. City of Orange, 169 N.J. Super. at 299-302.
In reliance upon Hilltop Associates v. Edison Tp., the parties and the trial judge assumed that it was firmly established that the Tenants' Property Tax Rebate Act did not preempt municipal action in the area of tax rebates to tenants. While authoritative, the Hilltop case is not dispositive of the issue raised in this case. As noted, the ordinance involved in the Hilltop case had both a surcharge and rebate provision. In the instant case, with the 1978 amendment eliminating the surcharge provision, we are left with the question as to whether an ordinance containing a rebate provision, without a corresponding surcharge provision, conflicts with the Tenants' Property Tax Rebate Act. If it does, the provisions of the Tenants' Property Tax Rebate Act take precedence. See N.J.A.C. 5:30-16.9 and *47 Cold Indian Springs Corp. v. Tp. of Ocean, 81 N.J. 502, 513 (1980).
In defining "property tax reduction" in the Tenants' Property Tax Rebate Act, the Legislature said:
... but such calculations for the property tax reduction shall exclude reductions resulting from judgments entered by county boards of taxation, the Division of Tax Appeals in the Department of the Treasury, or by courts of competent jurisdiction.[6] [N.J.S.A. 54:4-6.3(b)]
Thus, the tax reduction resulting from the judgments of the Tax Court, which reduced plaintiffs' assessments, were not included in the calculation of the rebates received by the tenants under the Tenants' Property Tax Rebate Act. We recognize that the Tax Court judgments reduced the assessment of plaintiffs' properties for 1976 which is the base year for calculation of rebates under the Tenants' Property Tax Rebate Act. N.J.A.C. 5:30-16.2.[7] We further recognize that for years subsequent to the Tax Court judgments the new 1976 tax level will be used for calculation of any future rebate under the State act. See Cold Indian Springs Corp. v. Ocean Tp., 81 N.J. at 511. However, the judgment entered in 1980 changing the assessment for the base year of 1976 does not, and cannot, affect the finality of the rebates made to the tenants under the Tenants' Property Tax Rebate Act.
To understand this, it is necessary to understand the background of the Tenants' Property Tax Rebate Act. The act reflects the Legislature's recognition that rent levels anticipate the tax burden on rental property. The act was designed to allow tenants to share in the reduction of the tax burden that *48 would result from increased State aid enacted in 1976. As originally enacted, P.L. 1976, c. 63, the act applied to the amount of property tax reduction attributable solely to the State aid received during a tax period from the Property Tax Relief Fund established in N.J.S.A. 54A:9-25. However, in 1977 the definition of "property tax reduction" was amended to its present form. Even tax reductions resulting from a municipal-wide reevaluation which reduces assessments are included within the act. See Cold Indian Springs Corp. v. Tp. of Ocean, 81 N.J. 502, where the court found it constitutional to include tax reductions as a result of reevaluation but exclude tax reductions as a result of a reduced assessment by a judgment on a tax appeal.
The plaintiffs landlords in this case received tax reductions as a result of the appropriation of moneys in the Property Tax Relief Fund to the municipality under N.J.S.A. 54A:9-25.[8] The landlords were required to share this tax reduction with their tenants to the extent of 65%.[9] Both landlord and tenants received that tax reduction and it has been divided between them as required by the Tenants' Property Tax Rebate Act.
As a result of the Tax Court judgments in 1980 reducing their assessments, the landlords have received a further tax reduction from the municipality which, under the local ordinance, they are obliged to share with their tenants to the extent of 75% after expenses. These are two separate tax reimbursements to the landlord and each must be shared with their *49 tenants. These tax reductions are separate and distinct and do not overlap. The duty to share with the tenants results from different pieces of legislation, one State and the other municipal. The question persists, did the State preempt the field?
Generally speaking, the field in which the ordinance operates may be said to be the same as that in which the State has acted, namely, the sharing of tax reductions. However, to find preemption, it is not enough that the Legislature has legislated upon the subject. Summer v. Teaneck Tp., 53 N.J. 548, 554 (1969). Our Supreme Court has suggested pertinent questions for consideration in determining preemption in Overlook Terrace Management v. Rent Control Bd. of West New York, 71 N.J. 451, 461 (1976). We have considered those questions in this case. It is of course possible that a municipal ordinance may conflict with the provisions of the Tenants' Property Tax Rebate Act. The Director of the Division of Local Government Services, in prescribing the procedures for computing property tax reductions and rebates pursuant to N.J.S.A. 54:4-6.10, has anticipated this possibility by adopting regulation N.J.A.C. 5:30-16.9 mentioned above. However, we have concluded that the ordinance in this case does not conflict with the State statute. Nor is there anything to indicate that the State law was intended expressly or impliedly to be exclusive in the field. While the entire area of rent leveling may reflect a need for uniformity, see Helmsley v. Borough of Fort Lee, 78 N.J. 200, 243 (1978), the limited application of the Tenants' Property Tax Rebate Act negates the idea of uniformity in the area of tax rebates to tenants. Obviously the State scheme is not so pervasive or comprehensive that it precludes the coexistence of municipal regulation. We have concluded that the ordinance is not in conflict with the Tenants' Property Tax Rebate Act. As noted above, the rebates do not overlap. The rebate under the State statute occurs immediately in any year in which the taxes on the property are less than the taxes levied in 1976. If the landlord later receives a refund for a given year, such as 1977, because the assessment had been *50 reduced through a tax appeal, that refund will be in addition to any tax reductions enjoyed in 1977 as a result of other causes, such as increased State aid.
The rationale for both rebates is the same, namely, that rents paid by tenants reflect the landlord's tax burden. When that burden is reduced, the legislation effectuates a sharing of that benefit by the landlord and the tenants. See Cold Indian Springs Corp. v. Tp. of Ocean, 81 N.J. at 512. This concept is explained in the statement attached to Senate Bill 1546, the original tenants' rebate legislation, which is quoted by the trial court in Cold Indian Springs Corp. v. Tp. of Ocean, 154 N.J. Super. 75 (Law Div. 1977):
The purpose of this bill is to ensure that the benefits of any property tax savings which would result from tax reform legislation would be provided tenants in addition to landlords, homeowners and commercial taxpayers. Pending tax reform legislation would levy an income tax on both homeowners and tenants in order to reduce property tax burdens. But since tenants pay property taxes indirectly through their landlords, without some type of pass-through mechanism like that provided by this bill, landlords would reap a windfall from any property tax reduction scheme. Without this bill, tenants who provide the money for the property taxes of their apartments would receive little or no benefit from any expected property tax reduction, but they would nonetheless have to assume new burdens under the income tax. [at 96]
When the definition of "property tax reduction" was expanded in 1977, the statement attached to the Senate version of the bill explained:
The amount of property tax reduction recognized under this bill differs from the current provisions at law. Currently only that amount of property tax reduction attributable to State [aid] and received for school purposes is to be considered. Under this bill any reduction realized by the property owner must be considered in calculating the tenant credit or rebate. [Senate Revenue, Finance and Appropriations Comm., Statement to Senate Comm. Substitute for Assembly Bill 2196 (Dec. 14, 1976)][10] [at 97]
We see no reason why the municipal officials in the enactment of an ordinance may not also recognize that a portion of the tenants' rent includes taxes. Thus, when the *51 taxes are reduced as a result of a change in the assessment upon the appeal of the landlord, an ordinance may provide that such reduction in taxes be shared with the tenants on some equitable formula. In Hilltop Associates v. Edison Tp., the court suggested that the 100% required there (albeit out of a tax surcharge) might be unreasonable, but we conclude that 75% of the net reduction as required here is not unreasonable.
The landlords contend that Section 9 of the ordinance as applied by the trial court "nullifies the decision of the Tax Court and the relief afforded thereby." This argument lacks merit. The landlords have received 25% of the tax reduction, plus the expense of taking the appeal. If the requirement that the landlords share the refunded taxes with their tenants results in the landlords receiving less than a just and reasonable return on their investment in the property, they can apply for hardship relief under Section 10 of the ordinance. Even though it may be more efficient for a municipality to anticipate common factors which increase a landlord's expense, such as taxes and fuel, and to provide surcharges for those items to reduce the need for hardship applications, there is no constitutional requirement that a municipality make provision for such surcharges as long as their hardship mechanism is prompt, fair and efficacious. Helmsley v. Boro. of Fort Lee, 78 N.J. at 242.
We therefore conclude that there is no conflict between the ordinance of the defendant municipality, as amended, and the Tenants' Property Tax Rebate Act. We further conclude that the State act did not preempt the field and that the trial court's determination that the tenants are entitled to the rebates as ordered is correct.
The trial judge ordered that interest be paid to the tenants "beginning 120 days after the final judgment of the Tax Court and continuing until payment is made at the rate of eleven percent (11%) per annum and shall apply for years 1977, 1978 and 1979." The landlords contend that there is no basis for adding such prejudgment interest to the tax refunds.
*52 The award of interest is within the discretion of the trial judge in accordance with principles of equity. Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134, 155 (App. Div. 1960), certif. den. 34 N.J. 66 (1961). Interest is an exaction for past due obligations and, in essence, is in the nature of a penalty. It is compensation for delay in payment. See Wayne Tp. v. Ricmin, Inc., 124 N.J. Super. 509, 514 (App.Div. 1973). The tenants were entitled to their share of the tax refund received by the landlord 120 days after the final judgment of the Tax Court. The decision by the trial court to award interest from that date was not an abuse of discretion. We note however that the amounts to be rebated were placed in an escrow account pursuant to a consent order. The interest payable subsequent to that deposit should be limited to the interest earned on the deposited funds since the landlord, after such deposit, has not had the use of those funds.
Affirmed, except as modified.
NOTES
[1] A separate "judgment pursuant to settlement" was entered for the year 1981 as to Parsippany Hills Associates containing the same reduction in assessment and reciting that the provisions of N.J.S.A. 54:2-43 (Freeze Act) shall not apply. As to Clearview Gardens Associates a judgment (Freeze Act) was entered on July 7, 1982 ordering that the assessment be a total of $251,437, but leaving the years blank. The parties indicated this applied to the year 1981.
[2] The amounts shown in the township council's resolution are incorrect. However, no objection is made to that error on this appeal.
[3] On February 22, 1983 an ordinance was adopted by the township council extending the ordinance for a period of two years beginning March 22, 1983. On March 2, 1983 the mayor vetoed that ordinance. A resolution by the township council overriding the mayor's veto failed to carry. No further ordinance having been adopted, the rent leveling ordinance expired on March 21, 1983.
[4] See, i.e., the savings clause contained in the ordinance involved in Wayne Tenants Council v. Wayne Tp., 180 N.J. Super. 128 (Law Div. 1981), which the court found to contain a reasonable time limitation.
[5] After October 31, 1978 there was no provision in the rent leveling ordinance for a tax surcharge.
[6] This was explained by Justice Sullivan in Cold Indian Springs Corp. v. Ocean Tp., 81 N.J. at 511-512, as one of practicality since tax bills must be prepared and delivered to the taxpayer at least 47 days prior to August 1 of the tax year, and the tax collector must use current assessment figures in making his computations, whereas the judgment of the Tax Court affecting that assessment may not be received for many years, as in this case.
[7] If the property is first rented after 1976 "the calendar year in which it is first offered for rent" is the base year. N.J.S.A. 54:4-6.3(c).
[8] Some of the relief was in the form of unbudgeted State aid which was to be prorated among the properties in the municipality according to their assessed valuation pursuant to temporary legislation during the transition period under P.L. 1976, c. 113, § 6 and P.L. 1977, c. 15, § 2.
[9] See N.J.S.A. 54:4-6.3(b) which reads, in pertinent part, "`Property tax reduction' means 0.65 times the difference between the amount of property tax paid or payable in any year on any qualified real rental property, exclusive of improvements not included in the assessment on the real property for the base year, and the amount of property tax paid in the base year...."
[10] Assembly Bill 2196 would have excluded from the definition of property tax reduction changes resulting from reevaluation or reassessment.