FUENTES, Circuit Judge,
dissenting.
In response to Christie I, where we held that New Jersey’s 2012 Sports Wagering Law (“2012 Law”) violated PASPA, the New Jersey Legislature passed the 2014 Law. In addition to repealing the 2012 Law in full, the 2014 Law also repealed all prohibitions on sports wagering and any rules authorizing the State to, among other things, license or authorize a person to engage in sports wagering, with respect to casinos and gambling houses in Atlantic City and horse racetracks in New Jersey. The repealer also maintained prohibitions for persons under 21 and for wagering on New Jersey collegiate teams or any collegiate competition occurring in New Jersey. Likewise, the 2014 Law stripped New Jersey of any involvement in sports wagering, regulatory or otherwise. In essence, the 2014 Law renders previous prohibitions on sports gambling non-existent.
The majority, however, takes issue with what it terms the “selective” nature of the partial repeal. First, that the repeal applies to specific locations. That is, under the 2014 Law, wagering may only take place at casinos, gambling houses, and horse racetracks. Next, the restriction against betting by persons under the age *269 of 21 would remain, and finally, restrictions against betting on New Jersey collegiate teams or any collegiate competition in New Jersey would remain. These restrictions, the majority concludes, amount to “authorizing” a sports-wagering scheme and, therefore, the 2014 Law must also violate PASPA. I disagree. As I see it, the issue is whether a partial repeal amounts to authorization. Because this logic rests on the same false equivalence[1] we rejected in Christie /, I respectfully dissent.
The majority, however, maintains that the 2014 Law “authorizes” casinos and racetracks to operate sports gambling while other laws prohibit sports gambling by all other entities.[2] According to the majority, “this is not a situation where there are no laws governing sports gambling in New Jersey” and “[ajbsent the 2014 Law, New Jersey’s myriad laws prohibiting sports gambling would apply to the casinos and racetracks.”[3] Yet, the majority is mistaken as to the-impact of a partial repeal. Repeal is defined as to “rescind” or “an abrogation of an existing law by legislative act.”[4] When a statute is repealed, “the repealed statute, in regard to its operative effect, is considered as if it had never existed.”[5] A repealed statute is treated as if it never existed; a partially repealed statute is treated as if only the remaining part exists.[6]
The 2014 Law, then, renders the previous prohibitions on sports gambling nonexistent. After the repeal, it is as if New Jersey never prohibited sports gambling in casinos, gambling houses, and horse racetracks. Therefore, with respect to those areas, there are no laws governing sports wagering and the right to engage in such conduct does not come from the state. Rather, the right to do that which is not prohibited stems from the inherent rights of the people.[7] The majority, however, *270 states that “[ajbsent the 2014 Law, New Jersey’s myriad laws prohibiting sports gambling would apply to the casinos and racetracks,” and that, as such, “the 2014 Law provides the authorization for conduct that is otherwise clearly and completely legally prohibited.”[8] We have refuted this position before. In Christie I, we held that “the lack of an affirmative prohibition of an activity does not mean it is affirmatively authorized by law.”[9] Such an argument, we said, “rests on a false equivalence between repeal and authorization and reads the term ‘by law’ out of the statute.”[10] We identified several problems in making this false equivalence — the most troublesome being that it “reads the term ‘by lav/ out of the statute.”[11] The majority’s position does just that. In holding that a partial repeal of prohibitions is state authorization, the majority must infer authorization. PASPA, however, contemplates more. In Christie I, we pointed to the fact that New Jersey’s 2012 amendment to its constitution, which gave the Legislature power to “authorize by law” sports wagering was insufficient to “authorize [it] by law.”[12] We explained, “that the Legislature needed to enact the [2012 Law] itself belies any contention that the mere repeal of New Jersey’s ban on sports gambling was sufficient to ‘authorize [it] by law[1].... [T]he ... Legislature itself saw a meaningful distinction between repealing the ban on sports wagering and authorizing it by law, undermining any contention that the amendment alone was sufficient to affirmatively authorize sports wagering.”[13] This is no less true of a partial repeal than it would be of a total repeal — which the majority concedes would not violate PASPA. Thus, to reach the conclusion that the 2014 Law, a partial repeal of prohibitions, authorizes sports wagering, the majority necessarily relies on this false equivalence. It concedes as much when stating “the 2014 Law” (the repeal) provides “the authorization” for sports wagering. Of course, this is the exact false equivalence we identified, and dismissed as a logical fallacy, in Christie I.[14]
The majority does not believe it makes this false equivalence. To support its position, the majority relies on the “selective” nature of the 2014 Law contending that “the Legislature’s use of the term [‘repeal’] does not change the fact that the 2014 Law selectively grants permission to certain entities to engage in sports gambling.”[15] First, it does not. There is no explicit grant of permission in the 2014 Law for any entity to engage in sports wagering. Second, not only does the majority fail to explain why such a partial repeal is equivalent to granting permission (by law) for these locations, but the very logic of such a position fails. If withdrawing prohibitions on “some” sports wagering is the equivalent to authorization by law, then withdrawing prohibitions on all sports wagering must be considered authorization by law.[16] Under this logic, New Jersey is left *271 with no choice at all — it must uphold all prohibitions on sports wagering in perpetuity or until PASPA is no more. This is precisely the opposite of what we held in Christie I — “[n]othing in these words requires that the states keep any law in place” [17] — and why we found PASPA did not violate the anti-commandeering principle.
The majority, along with the United States, conceded that a complete repeal does not violate PASPA. Indeed, in its brief in opposition to New Jersey’s petition for certiorari, the United States went as far as to concede that New Jersey could repeal its prohibitions in whole or in part.[18] Simply put, there is nothing special about a partial repeal and it, too, does not violate PASPA. The 2014 Law is a self-executing deregulatory measure that repeals existing prohibitions and regulations for sports wagering and requires the State to abdicate any control or involvement in sports wagering. I do not see, then, how the majority concludes that the 2014 Law authorizes sports wagering, much less in violation of PASPA.
The majority equally falters when it analogizes the 2014 Law to the exception Congress originally offered to New Jersey in 1992. The exception stated that PASPA did not apply to “a betting, gambling, or wagering scheme ... conducted exclusively in casinos[,] ... but only to the extent that ... any commercial casino gaming scheme was in operation ... throughout the 10-year period” before PASPA was enacted.[19] Setting aside the most obvious distinction between the 2014 Law and the 1992 exception, that it contemplated a scheme that the 2014 Law does not authorize,[20] the majority misses the mark with this comparison when it states: “If Congress had not perceived that sports gambling in New Jersey’s casinos would violate PASPA, then it would not have needed to insert the New Jersey exception.”[21] Congress, however, did not perceive, or intend, for private sports wagering in casinos to violate PASPA. Instead, Congress prohibited sports wagering pursuant to state law. That the 2014 Law might bring about an increase in the amount of private, legal sports wagering in New Jersey is of no moment and the majority’s reliance on such a possibility is misplaced. The majority is also wrong in an even more fundamental way: the exception Congress offered to New Jersey was exactly that, an exception to the proscriptions of PASPA. That is to say, with this exception, New Jersey could have “sponsor[ed], operate[d], advertise[d], promote[d], license[d], or authorize[d] by law or compact” sports wagering. Under the 2014 Law, of course, New Jersey cannot and does not aim to do any of these things.
The majority fails to illustrate how the 2014 Law results in sports wagering par *272 suant to state law when there is no law in place as to several locations, no scheme created, and no state involvement. A careful comparison to the 2012 Law is instructive. The 2012 Law lifted New Jersey’s ban on sports wagering and provided for the licensing of sports-wagering pools at casinos and racetracks in the State. Indeed, New Jersey set up a comprehensive regime for the licensing and close supervision and regulation of sports-wagering pools. For instance, the 2012 Law required any entity that wished to operate a “sports pool lounge” to acquire a “sports pool license.” To do so, a prospective operator was required to pay a $50,000 application fee, secure DGE approval of all internal controls, and ensure that any of its employees who were to be directly involved in sports wagering obtained individual licenses from DGE and the Casino Control Commission. In addition, the regime required entities to, among other things, submit extensive documentation to DGE, to adopt new “house” rules subject to DGE approval, and to conform to DGE standards. This violated PASPA in the most basic way: New Jersey developed an intricate scheme to both authorize (by law) and license sports gambling. The 2014 Law repealed this entire scheme.
Without more, the majority is simply left calling a tail a leg — which, as the adage goes, does not make it so. Because I do not see how a partial repeal of prohibitions is tantamount to “authorizing by law” a sports-wagering scheme in violation of PASPA, I respectfully dissent.

. A false equivalence is a logical fallacy which describes a situation where there is a logical and apparent equivalence, but when in fact there is none. This fallacy is categorized as a fallacy of inconsistency. Harry Phillips & Patricia Bostian, The Purposeful Argument: A Practical Guide, Brief Edition 129 (2014). In Christie I, we held that there was a false equivalence between repeal and authorization. 730 F.3d at 233.

. For brevity, I refer to the repeal of prohibitions as applying to casinos, gambling houses, and horse racetracks, with the understanding that the repeal applies to casinos and gambling houses in Atlantic City and horse racetracks in New Jersey for those over 21 not betting on New Jersey collegiate teams or any collegiate competition occurring in New Jersey.

. Maj. Op. 265-66.

. Black's Law Dictionary 1325 (8th ed.2007). sports-wagering scheme in violation of PAS-PA, I respectfully dissent.

. 73 Am.Jur.2d Statutes § 264.

. See, e.g., Ex Parte McCardle, 74 U.S. 506, 514, 7 Wall. 506, 19 L.Ed. 264 (1868) ("[W]hen an act of the legislature is repealed, it must be considered ... as if it never existed.” (internal quotation marks omitted)); Anderson v. USAir, Inc., 818 F.2d 49, 55 (D.C.Cir.1987) ("Common sense dictates that repeal means a deletion. This court would engage in pure speculation were it to hold otherwise.”); In re Black, 225 B.R. 610, 620 (Bankr.M.D.La.1998) ("Can a statute use a repealed statute? Is a repealed statute something or is it nothing? We think the answers are ‘no’ and 'nothing.' ”); Kemp by Wright v. State, 147 N.J. 294, 687 A.2d 715, 723 (1997) ("In this State it is the general rule that where a statute is repealed and there is no savingfs] clause or a general statute limiting the effect of the repeal, the repealed statute ... is considered as though it had never existed, except as to matters and transactions passed and closed.” (quoting Parsippany Hills Assocs. v. Rent Leveling Bd. of Parsippany-Troy Hills Twp., 194 N.J.Super. 34, 476 A.2d 271, 275 (1984))).

. Christie I, 730 F.3d at 232.

. Maj. Op. 265-66.

. Christie I, 730 F.3d at 232.

. Id. at 233.

. Id.

. Id. at 232.

. Id.

. Id. at 233.

. Maj. Op. 266.

. Put another way, would a state violate PASPA if it enacted a complete repeal of sports-wagering prohibitions and later enacted limited prohibitions regarding age requirements and places where wagering could occur? There is simply no conceivable reading of PASPA that could preclude a state from restricting sports wagering.

. 730 F.3d at 232.

. Br. for the United States in Opp’n at 11, Christie v. Nat’l Collegiate Athletic Ass'n, Nos. 13-967, 13-979, and 13980 (U.S. May 14, 2014).

. 28 U.S.C. § 3704(a)(3)(B).

. For example, “[Division of Gaming Enforcement ("DGE”)] now considers sports wagering to be 'non-gambling activity’ ... that is beyond DGE's control and outside of DGE’s regulatory authority.” App. 416. At oral argument, Appellants conceded they would have no authority or jurisdiction over sports wagering. See, e.g., Tr. 14:12-15 ("Q: Sports betting is going to take place in the casino with no oversight whatsoever; A: That’s right.”); Tr. 21:15-20 (“All of the state and federal laws that deal with consumer protection, criminal penalties and the like remain in full force and effect at the sports betting venue. The only thing that doesn't get regulated is the sports betting itself.”).

.Maj. Op. 267.